WASHOE MEDICAL CENTER, INC., A NON-PROFIT NEVADA CORPORATION, APPELLANT, v. CHURCHILL COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENT.

No. 22512

August 20, 1992                              836 P.2d 624

*Robert E. Nelson-Kortland* and *Terrance E. Shea,* Reno, for Appellant.

*Kevin Pasquale,* District Attorney, and *Joe Ward,* Deputy District Attorney, Churchill County; *Thorndal, Backus, Maupin & Armstrong* and *Brent Kolvet,* Reno, for Respondent.

## OPINION

*Per Curiam:*

On April 13, 1988, John W. Cooper (Cooper) was transferred from Churchill Regional Medical Center in Churchill County to Washoe Medical Center (WMC) in Reno, for treatment of an acute medical condition. On April 14, 1988, WMC sent a notice addressed to Ruby Anderson, the Churchill County Clerk, which stated that Cooper was a patient and requested that Churchill County accept financial responsibility for him. WMC discharged Cooper on April 15, 1988, and his bill totaled $3,981.21. When the Churchill County Welfare Department requested information from Cooper about his financial status, he did not respond. Subsequently, Churchill County refused to pay the bill, claiming that it did not request WMC to render medical services to Cooper, that it was not given proper notice under Nevada law

when Cooper was admitted to WMC, and that the failure to follow the statutory notice procedures was fatal to WMC's claim for payment. Also, Churchill County stated that payment was denied because it could not determine Cooper's eligibility for assistance. WMC filed a complaint against Cooper and Churchill County on April 11, 1990, seeking monetary damages pursuant to NRS 428.010,[1] 428.015,[2] 428.020(2),[3] 439B.330(4) and (5),[4] and 450.400.[5] On May 15, 1990, WMC filed a motion for summary judgment. On January 7, 1991, Churchill County filed

---

[1]NRS 428.010(1) provides in part:

[E]very county shall provide care, support and relief to the poor, indigent, incompetent and those incapacitated by age, disease or accident, lawfully resident therein, when those persons are not supported or relieved by their relatives or guardians, by their own means, or by state hospitals, or other state, federal or private institutions or agencies.

[2]NRS 428.015 establishes standards of eligibility for medical and financial assistance and defines emergency care and medically necessary care.

[3]NRS 428.020(2) provides:

The county of residence of a person placed in institutional care is the county of residence of that person before he was placed in institutional care.

[4]NRS 439B.330(4) and (5) provide, in part, as follows:

4. The county which receives a discharge form from a hospital for an indigent inpatient shall verify the status of the patient and the amount which the hospital is entitled to receive.

5. [I]f the county is the county of residence of the patient and the patient is indigent, the county shall pay to the hospital the amount required.

[5]NRS 450.400 provides as follows:

1. When the privileges and use of the hospital are extended to a resident of another county who is reasonably believed to be indigent, as defined in NRS 439B.310, and who is:

(a) Entitled under the laws of this state to relief, support, care, nursing, medicine or medical or surgical aid from the other county; or

(b) Injured, maimed or falls sick in the other county,

the governing head shall notify the board of county commissioners of that county within 3 working days after the person is admitted to that hospital.

2. The notice must be in writing and addressed to the board of county commissioners of that county.

3. Except in the case of an injury suffered in a motor vehicle accident, the board of county commissioners receiving the notice shall cause the person to be removed immediately to that county, and shall pay a reasonable sum to the hospital for the temporary occupancy, care, nursing, medicine, and attendance, other than medical or surgical attendance, furnished to him.

4. If the board of county commissioners neglects or refuses to remove the person, or if in the opinion of the attending physician it is not advisable to remove the person, the governing head has a legal claim against the county for all charges for occupancy, nursing, care, medicine, and attendance, other than medical or surgical attendance, necessarily furnished, and may recover those charges in a suit at law.

a motion for summary judgment. The district court conducted a hearing on February 26, 1991, on the motions for summary judgment. On April 17, 1991, the district court found that WMC's notice was fatally defective and granted Churchill County's motion for summary judgment.

A district court may properly grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 499, 797 P.2d 946, 947 (1990). As we stated in Sawyer v. Sugarless Shops, 106 Nev. 265, 267-68, 792 P.2d 14, 15 (1990) (all of the non-movant's factual statements must be accepted as true), summary judgment is foreclosed when there is the slightest doubt as to the operative facts.

Using a strict application of NRS 450.400, the district court granted summary judgment on the issue of notice. Although the statute requires notice to the board of county commissioners, WMC's notice was sent to the county clerk; however, WMC argues that actual notice should be sufficient to meet statutory requirements. In Washoe Medical Center v. Lyon County, 107 Nev. 493, 813 P.2d 1008 (1991), in which the hospital also sent notice of indigency to a county clerk, this court concluded that "actual notice would satisfy the requirements of NRS 450.400." This court further stated that:

> The purpose of the notice requirement is to enable the commissioners of the resident county to remove a patient to the local hospital so that the hospitalized person is closer to her family and friends, and so that local facilities are utilized. . . . Actual notice fulfills all of the purposes of the notice requirement.

*Id.* at 494, 813 P.2d at 1009 (citations omitted). Thus, if the board of county commissioners received actual notice of Cooper's hospitalization, we conclude that such notice would be sufficient to satisfy the purpose and requirements of the statute. Since the district court erred in its application of NRS 450.400 to these facts, and because the record does not indicate whether the board of county commissioners received actual notice, we reverse and remand for a finding on that issue.

The district court made no finding as to whether Cooper is an indigent person under NRS 450.400.[6] *See* Nye County v. Washoe

---

[6] Cooper's indigency is a question of fact. When admitted to WMC, he was unemployed and had no health insurance. However, the Churchill County Assessor's records indicate that he has acquired ownership of a mobile home since his hospitalization.

Medical Center, 108 Nev. 490, 492, 835 P.2d 780, 781 (1982) ("under Nevada's statutory scheme, indigency is a prerequisite to a county's obligation to provide charitable medical aid"). If WMC satisfied the notice requirements under either NRS 450.400 or 439B.300 and Cooper is found to be indigent, WMC is entitled to have Churchill County pay Cooper's medical bill. We therefore reverse and remand for a determination of whether Cooper was in fact indigent.

We disagree with WMC's remaining contention that it had an alternative claim pursuant to NRS 439B.300 through NRS 439B.340. *See* Washoe Medical Center v. Lyon County, 107 Nev. 493, 495 n.3, 813 P.2d 1008, 1010 n.3 (1991) ("[w]e are not persuaded that the procedure in NRS 439B.330(3) serves to rescind the more precise requirement in NRS 450.400").

For the reasons specified above, we reverse the order granting summary judgment and remand this matter to the district court for further proceedings consistent with this opinion.