*1360
 
 OPINION
 

 Per Curiam:
 

 Ronald Garamendi and John Garcia worked for Las Vegas Paving (LVP) and were electrocuted while they were pouring a concrete floor for a new flood channel in Las Vegas. Due to the depth of the excavated channel, LVP needed a pump truck to transport the concrete from Nevada Ready Mix’s trucks to the floor of the channel. LVP hired Ortega Concrete Pumping, Inc. (Ortega) to provide the pump truck. On the day of the concrete pour, the boom of Ortega’s concrete truck, operated by an Ortega employee, struck an overhead power line, sending a high voltage current down into the channel where Garamendi and Garcia were working; both sustained serious injuries.
 

 Garamendi (and his wife) and Garcia filed an action against Ortega and Nevada Power Company for personal injuries, and the State Industrial Insurance System (SIIS) filed a complaint against Ortega seeking subrogation of benefits paid to the injured men. Ortega claimed that it was a subcontractor or independent contractor
 
 [1]
 
 of LVP and was, therefore, a statutory co-employee of the injured men immune from liability under the exclusive remedy provisions of the Nevada Industrial Insurance Act (NIIA). The lower court agreed and granted summary judgment in favor of Ortega on both complaints. We conclude that this case was not ripe for summary judgment and, therefore, reverse and remand this case to the district court for further proceedings.
 

 FACTS
 

 Garamendi and Garcia were employees of LVP. Clark County contracted with LVP to build a flood channel at the Las Vegas intersection of Nellis Boulevard and Flamingo Road. Garamendi testified in a deposition that all of LVP’s projects related to
 
 *1361
 
 constructing storm drains or bridges. On August 2, 1991, Gara-mendi and Garcia were sent to the job site to pour the concrete floor and walls of the excavated flood channel. Power lines, owned and maintained by Nevada Power Company, were located above one end of the excavated channel.
 

 The day before the concrete pour was to take place, LVP called Ortega to deliver a concrete pump truck to the site, to be used for two hours. LVP needed a pump truck because safety codes prohibited dropping wet concrete from a height greater than five feet. As the floor of the channel excavated by LVP was more than five feet below the road, the concrete could not be dropped from the chutes of Nevada Ready Mix’s trucks, from whom LVP had purchased the concrete. Ortega billed LVP at an hourly rate for the entire time that the truck was at the job site, regardless of whether it was in use, for a total of four hours. There was no contract between LVP and Ortega, and Ortega did not have, and was not required to have, a contractor’s license.
 

 Ortega had a pump truck with a tall boom through which concrete was pumped via a hose extending from the boom. Nevada Ready Mix loaded the concrete into Ortega’s pump truck, and the concrete was then pumped up the hose attached to the boom. Mr. Ortega controlled the hydraulic boom’s movements with two joysticks, and Garamendi and Garcia were at the end of the hose pouring and finishing the concrete as it came into the flood channel.
 

 Towards the end of the pouring project, some water leaked through the channel and damaged one corner of the pour, the corner closest to the power lines. Garamendi and Garcia went back to re-pour a section of that corner. At this point, Mr. Ortega turned control of the pump truck over to his employee, Eddie Williams, who had recently arrived at the project. Garamendi and Garcia then finished repairing the corner. After they had stopped working, Williams allegedly hit the power lines with the boom of the pump truck; a current raced down the boom seeking ground and passed through Garamendi (who was still holding the hose) and Garcia, severely burning them both.
 

 SIIS paid workers’ compensation to Garamendi and Garcia but filed suit against Ortega on November 24, 1992, seeking reimbursement for those benefits paid. On July 28, 1993, Garamendi, his wife, and Garcia filed their own action for personal injury damages against Ortega as a third-party tortfeasor. SIIS’s action was consolidated with Garamendi and Garcia’s actions.
 
 [2]
 

 On March 25, 1994, Ortega filed a motion for summary
 
 *1362
 
 judgment claiming that the consolidated lawsuits pending against it were barred by the exclusive remedy provisions of Nevada’s workers’ compensation statutes, which provide that the sole source of redress for an employee injured by the negligence of his employer or fellow employees is workers’ compensation. The lower court concluded that Ortega was immune from suit because Ortega was acting as LVP’s subcontractor at the time of the accident and was thus a fellow employee of the injured LVP employees; accordingly, the district judge granted Ortega’s summary judgment motion.
 

 Garamendi and Garcia filed a motion for reconsideration and provided the district court with affidavits from the Nevada State Board of Contractors (NSBC) and various concrete pumping companies in support of their contention that the judge had erroneously concluded that Ortega was a subcontractor of LVP. SIIS presented the lower court with the affidavit of Kay H. Barber, the executive officer of NSBC, which stated that “[t]he NSBC does not require that concrete pumping services be licensed because their work does
 
 not
 
 fall within the definition of contractors/subcontractors in NRS 624.020,
 
 [3]
 
 or of concrete contractors under NAC 624.230.” (Emphasis added.)
 

 Barber stated that “[t]he concrete pumping truck is merely a conduit through which the concrete passes from the concrete mixing/delivery truck [i.e., Nevada Ready Mix] to [a] location on the construction site where the concrete is needed.” She further declared that
 

 the act of providing and operating a concrete pumping device, such as a concrete pumping truck, at the request of another contractor does not mean to “construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof,” as specified in NRS 624.020.
 

 
 *1363
 
 Following a hearing, the district court denied the reconsideration motion. This timely appeal ensued.
 

 No transcript of the lower court’s hearing on Ortega’s motion for summary judgment exists in the record. However, the minutes from that hearing state the district judge’s declaration: “The Court thinks Ortega is acting as a contractor and ORDERED, the motion is GRANTED.” In deciding that no genuine issue of fact existed that Ortega had been acting as LVP’s subcontractor, the district court focused on the fact that Ortega had an operator driving the pump truck and did not just have its equipment at the job site when the accident occurred. Notwithstanding SIIS’s argument that the pump truck was merely a conduit to move the cement from Nevada Ready Mix’s trucks to the bottom of the flood channel for installation by LVP, the judge found the fact that Ortega and LVP employees were all at the same job site working on the same project dispositive. On these facts, it appears that the judge concluded that, as a matter of law, Ortega was acting as a subcontractor of LVP, LVP was Ortega’s statutory employer, and thus, Ortega and the injured plaintiffs were statutory co-employees.
 

 DISCUSSION
 

 “[Sjummary judgment is proper only when there are no issues of fact and the moving party is entitled to such an expedited judgment as a matter of law.” Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 662 (1985); NRCP 56. Summary judgment will not lie where there is the slightest doubt as to the operative facts. Washoe Medical Center v. Churchill County, 108 Nev. 622, 625, 836 P.2d 624, 626 (1992).
 

 In this appeal, SUS and Ortega debate the proper means of determining whether Ortega was a statutory employee of LVP (and thereby a fellow employee of the injured workers) for purposes of invoking the exclusive remedy provision of the NIIA. We recently resolved this issue in Tucker v. Action Equipment, 113 Nev. 1349, 951 P.2d 1027 (1997).
 

 In
 
 Tucker,
 
 we held that in a construction case, where the defendant is not a licensed contractor pursuant to NRS Chapter 624, the “normal work test,” articulated in Meers v. Haughton Elevator, 101 Nev. 283, 286, 701 P.2d 1006, 1007 (1985), must be applied to determine the issue of immunity.
 
 Tucker,
 
 113 Nev. at 1357, 951 P.2d at 1032. Accordingly, pursuant to NRS 616B.603(1)(b), which codified the
 
 Meers
 
 “normal work test,” the relevant factual inquiry in the instant case is whether LVP was
 
 *1364
 
 in the “same trade, business, profession or occupation” as Ortega at the time of the accident.
 

 The parties further contest the viability of what this court has labeled the “control test.” In
 
 Tucker,
 
 we concluded that “the legislature intended the use of only the
 
 Meers
 
 test” in construction cases involving an unlicensed independent contractor.
 
 Tucker,
 
 113 Nev. at 1357, 951 P.2d at 1032. We explicitly held that the five-factor control test set forth in Leslie v. J.A. Tiberti Constr., 99 Nev. 494, 497, 664 P.2d 963, 965 (1983), “is no longer the primary standard applicable to determine whether one is immune from suit under NIIA. Rather, the issue of control is only one factor to be considered in resolving ‘normal work’ issues under
 
 Meers.” Tucker,
 
 113 Nev. at 1357, 951 P.2d at 1032.
 

 Pursuant to our holding in
 
 Tucker,
 
 in a construction case involving an unlicensed contractor, the relevant inquiry is whether Ortega was in the “same trade, business, profession or occupation” as LVP at the time of the accident. Accordingly we remand this case to the district court to determine if genuine issues of material fact exist as to whether Ortega satisfied the “normal work test.”
 
 [4]
 

 CONCLUSION
 

 The district court must consider the motion for summary judgment in light of the “normal work test” codified at NRS 616B.603 and determine whether there are issues of fact to be resolved at trial. Therefore, we reverse the district court’s order granting summary judgment and remand this case to the district court for further proceedings consistent with this opinion.
 

 [1]
 

 In referring to Ortega’s status, the terms “contractor,” “subcontractor,” and “independent contractor” are used interchangeably by the lower court and the parties. For purposes of the instant analyses, these terms are functional equivalents.
 
 See, e.g.,
 
 NRS 616A.320 (formerly NRS 616.115) (“ ‘Subcontractors’ shall include independent contractors.”); NRS 616A.210 (formerly NRS 616.085) (subcontractors and independent contractors are both considered employees of the principal contractor).
 

 [2]
 

 Appellants Garcia, Garamendi (and his wife), and SIIS, shall be collectively referred to in this opinion as “SIIS.”
 

 [3]
 

 NRS 624.020 provides, in pertinent part:
 

 2. [A] contractor is any person, . . . who in any capacity other than as the employee of another with wages as the sole compensation, undertakes to, or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. . . .
 

 3. A contractor within the meaning of this chapter includes subcontractor or specialty contractor ....
 

 [4]
 

 We reject SIIS’s contention that Ortega was not a “contractor” pursuant to NRS 624.020(3) because it was merely a supplier of equipment to the job site. Ortega furnished neither materials nor supplies in this instance. Our refusal to grant Ortega immunity as a matter of law stems from the fact that it was not licensed as a construction contractor under NRS Chapter 624.