GES, INC., A NEVADA CORPORATION, APPELLANT, *v.* JEFF CORBITT; MICHELLE CORBITT; POWERLINE, INC., A COLORADO CORPORATION; AND VIP GLOBAL DESIGNS, INC., A COLORADO CORPORATION, RESPONDENTS.

No. 33528

April 13, 2001                                              21 P.3d 11

[Rehearing denied August 10, 2001]

*Law Offices of John & Elizabeth Foley,* Las Vegas, for Appellant.

*Alverson Taylor Mortensen Nelson & Sanders* and *Nathan R. Reinmiller,* Las Vegas, for Respondents Powerline, Inc., and VIP Global Designs, Inc.

*Hannah C. Irsfeld* and *Bradley L. Booke,* Las Vegas, for Respondents Jeff and Michelle Corbitt.

Before MAUPIN, C. J., ROSE and BECKER, JJ.

## OPINION

*Per Curiam:*

This appeal arises from a judgment entered in a negligence action brought by respondents Jeff and Michelle Corbitt against appellant GES, Inc. ("GES"),[1] and respondents Powerline, Inc., and VIP Global Designs, Inc. ("Powerline/VIP").[2] GES appeals, claiming that it enjoys immunity from the Corbitts' suit under the Nevada Industrial Insurance Act ("NIIA"). GES also claims that the district court erred in finding it jointly and severally liable

---

[1]Generally known as Greyhound Exposition Services.

[2]Powerline, Inc., is a wholly-owned subsidiary of VIP Global Designs, Inc.

with Powerline/VIP. While we conclude that GES is not immune from suit under the NIIA because its normal work was not the same as Mr. Corbitt's, we agree that the district court erred in finding it jointly and severally liable. Accordingly, we affirm the district court's judgment in part and reverse it in part.

## FACTS

The accident in question occurred during preparation of an exhibit booth at the 1995 Winter Consumers Electronic Show ("the convention") in Las Vegas. Mr. Corbitt was employed as a lighting technician by Legends in Concert ("Legends"), an entertainment group scheduled to perform during the convention at the Powerline/VIP exhibit site. Mr. Corbitt was severely injured while supervising the placement and programming of lighting at the exhibit booth.

As background, GES, a licensed Nevada electrical contractor and provider of drayage services for Las Vegas convention events, contracted to assemble a ground truss structure at the Powerline/VIP booth on which cyberlighting for the Legends performance was to be installed. This truss structure was the focal point of the accident. GES employees placed the truss assembly over the booth and temporarily secured the apparatus with nylon straps. According to evidence adduced at trial, GES employees advised Powerline/VIP representatives that the truss assembly had not been finally secured. The record also reveals that GES employees understood the nylon straps to be temporary and that Bart Delorenzo, vice-president of marketing for VIP, would purchase the appropriate bolts or clamps to stabilize the truss. Unfortunately, however, the cyberlight installation proceeded under the supervision of Powerline/VIP employees before the truss was secured.

An instant after the second cyberlight was hung, the truss swayed and collapsed in Mr. Corbitt's direction, knocking him from a forklift on which he was standing. Mr. Corbitt fell face first approximately thirteen feet to the parking lot surface and suffered a fractured skull, fractured sinuses, fractured wrists and elbow, and other related injuries.

The Corbitts initiated a negligence action against GES, Powerline/VIP, and a third defendant, Skytop Total Production Services ("Skytop"). The district court denied GES's motion for summary judgment, which was based upon its claim of immunity under the NIIA. At trial, the jury returned a general defense verdict in favor of Skytop, but awarded damages exceeding $1,100,000.00 against Powerline/VIP and GES.

The jury, by way of special verdict, assessed the comparative fault of the parties as follows: ten percent against Mr. Corbitt,

twenty-five percent against GES, and sixty-five percent against Powerline/VIP. In response to a motion to clarify the verdict, the district court found that Powerline/VIP and GES acted in concert and, thus, concluded that these defendant parties were jointly and severally liable to the Corbitts.[3] Thereafter, Powerline/VIP entered into a settlement with the Corbitts that was approved by the district court as having been undertaken in good faith.[4]

## DISCUSSION

### NIIA immunity

GES argues that it is immune from liability under the NIIA and that the district court erred in refusing to grant it summary judgment.

An order denying summary judgment is not independently appealable;[5] however, we may review the propriety of the district court's summary judgment ruling because GES has properly raised the issue in its appeal from the final judgment.[6] Our review is de novo and without deference to the district court's findings.[7] Summary judgment is appropriate only when there are no material issues of fact and the moving party is entitled to judgment as a matter of law.[8]

Under the NIIA, workers' compensation is an employee's only remedy against his employer and co-employees for an industrial injury; however, the injured worker may pursue a common law tort action against any tortfeasor who is not his statutory employer or co-employee.[9] To determine whether GES and Corbitt had a statutory employment relationship under the NIIA, so that GES is

---

[3]*See* NRS 41.141(5).

[4]*See* NRS 17.225 *et seq.*

[5]NRAP 3A(b); *Taylor Constr. Co. v. Hilton Hotels,* 100 Nev. 207, 678 P.2d 1152 (1984).

[6]NRAP 3A(a); *Outboard Marine Corp. v. Schupbach,* 93 Nev. 158, 161, 561 P.2d 450, 452 (1977). To the extent that *State, Department of Transportation v. Barsy,* 113 Nev. 709, 715 n.1, 941 P.2d 971, 973 n.1 (1997), and *Evans v. Southwest Gas,* 108 Nev. 1002, 1003 n.1, 842 P.2d 719, 720 n.1 (1992), are inconsistent, they are overruled.

[7]*Caughlin Homeowners Ass'n v. Caughlin Club,* 109 Nev. 264, 266, 849 P.2d 310, 311 (1993).

[8]NRCP 56; *SIIS v. Ortega Concrete Pumping, Inc.,* 113 Nev. 1359, 1363, 951 P.2d 1033, 1036 (1997).

[9]*Tucker v. Action Equip. and Scaffold Co.,* 113 Nev. 1349, 1353-54, 951 P.2d 1027, 1029-30 (1997).

immune from the Corbitts' negligence suit, we apply the ''normal work test'' originally articulated in *Meers v. Haughton Elevator*[10] and now codified as NRS 616B.603(1)(b).[11] The ''normal work test'' is used in non-construction cases and in construction cases when the defendant is not a principal contractor[12] licensed under NRS chapter 624 or is not working pursuant to a construction agreement with such a licensed principal contractor.[13] Here, the exhibit booth and the lighting truss structure were displays, requiring assembly, not construction. In addition, although GES was licensed under NRS chapter 624, GES was not a principal contractor and GES's work at the Powerline/VIP booth was not performed pursuant to a construction agreement with a licensed principal contractor or within the scope of its specialty contractor's license.

Under the ''normal work test,'' GES is immune from suit under the NIIA only if it was in the same trade, business, profession or occupation as Legends, Mr. Corbitt's employer.[14] According to the record before us, GES and Legends were in different trades entirely, with GES supplying electricity, hauling and assembly services to convention exhibitors, and Legends providing live stage entertainment involving music and custom lighting for exhibitors. Mr. Corbitt worked for Legends as a lighting designer and programmer. Thus, because GES was not entitled to NIIA immunity under the normal work test analysis, the district court did not err by denying GES's motion for summary judgment.

*Joint and several liability*

GES argues that the district court erred in finding it jointly and severally liable with Powerline/VIP under NRS 41.141(5)(d), which permits such liability for defendants who act in concert. We agree.

NRS 41.141 was amended in 1987 to read, in relevant part:

> 4. Where recovery is allowed against more than one defendant in such an action [where comparative negligence is a viable partial defense],[15] except as otherwise provided in subsection 5, each defendant is severally liable to the plain-

[10]101 Nev. 283, 701 P.2d 1006 (1985).

[11]*Tucker*, 113 Nev. at 1356-57, 951 P.2d at 1031-32.

[12]*See* NRS 616A.285.

[13]*Tucker*, 113 Nev. at 1357, 951 P.2d at 1033.

[14]NRS 616B.603(1)(b); *Ortega*, 113 Nev. at 1363-64, 951 P.2d at 1036; *Tucker*, 113 Nev. at 1356, 951 P.2d at 1031.

[15]*Buck v. Greyhound Lines*, 105 Nev. 756, 783 P.2d 437 (1989).

tiff only for that portion of the judgment which represents the percentage of negligence attributable to him.

5. This section does not affect the joint and several liability, if any, of the defendants in an action based upon:

. . .

(d) The concerted acts of the defendants . . . .

In a tort action, when the plaintiff is found comparatively negligent in an apportioned amount of fifty percent or less, defendants found liable are presumed under NRS 41.141(4) to be severally liable unless an exception under subsection (5) applies. Here, the jury, by special verdict, apportioned liability in the following percentages: Mr. Corbitt ten percent; GES twenty-five percent; Powerline/VIP sixty-five percent. Although Mr. Corbitt's comparative negligence presumptively rendered GES severally liable on the negligence claim, the district court subsequently entered judgment imposing joint and several liability on GES and Powerline/VIP based upon the concerted acts exception in NRS 41.141(5)(d). Specifically, the district court found that

> Powerline and GES's negligence combined to cause the injury to [Mr. Corbitt]. GES and Powerline worked together to get the truss/exhibit put up. Both defendants were negligent in constructing the truss. Although GES's employees told Powerline that the straps would not secure the corners [of] the truss, GES is not relieved of liability because of the employees' warning. The warning should not relieve GES of joint and several liability because GES did nothing to fix the situation.

We conclude that the district court incorrectly interpreted the phrase ''concerted acts.''

Statutory construction is a legal question requiring independent appellate review, and ''[a] statute should always be construed to avoid absurd results.''[16] We previously discussed the meaning of ''concert of action'' in *Dow Chemical Co. v. Mahlum*[17] and explained that this doctrine requires more than just agreement to act:

> Concert of action resembles the tort of civil conspiracy. *Halberstam,* 705 F.2d at 477. . . .
>
> Both causes of action require an agreement. To prevail in a civil conspiracy action, a plaintiff must prove an agreement

---

[16]*General Motors v. Jackson,* 111 Nev. 1026, 1029, 900 P.2d 345, 348 (1995); *Nyberg v. Nev. Indus. Comm'n,* 100 Nev. 322, 324, 683 P.2d 3, 4 (1984).

[17]114 Nev. 1468, 1488-89, 970 P.2d 98, 111-12 (1998).

between the tortfeasors, whether explicit or tacit. *See Eikelberger v. Tolotti,* 96 Nev. 525, 528 n.1, 611 P.2d 1086, 1088 n.1 (1980). Similarly, when [Restatement of Torts] section 876 [concert of action] refers to acting in concert with another tortfeasor or pursuant to a common design, it refers to this concept of agreement. *See* section 876(a), cmt. a; *Halberstam,* 705 F.2d at 477. Proof of an agreement alone is not sufficient, however, because it is essential that the conduct of each tortfeasor be in itself tortious. Section 876(a), cmts. b & c.

To the extent that our holding in *Mahlum* suggests that concert of action requires no more than an agreement along with tortious conduct, it is disfavored. To be jointly and severally liable under NRS 41.141(5)(d)'s concert of action exception, the defendants must have agreed to engage in conduct that is inherently dangerous or poses a substantial risk of harm to others. Thus, this requirement is met when the defendants agree to engage in an inherently dangerous activity, with a known risk of harm, that could lead to the commission of a tort.[18] Mere joint negligence, or an agreement to act jointly, does not suffice; such a construction of NRS 41.141(5)(d) would render meaningless the general rule of several liability.

Here, GES and Powerline/VIP combined their efforts in preparing the truss structure and exhibit booth. Evidence in the record suggests that GES employees knew that the truss assembly was incomplete and that GES employees told the Powerline/VIP representative that the nylon straps would not secure the truss. Record evidence also suggests that Powerline/VIP employees pro-

---

[18]*See Walls v. Jacob North Printing Co., Inc.,* 618 N.W.2d 282, 285 (Iowa 2000) ("[c]rucial to proof of concerted action, however, is proof that the parties acted 'in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result'") (quoting Restatement (Second) of Torts § 876, at 315 cmt. a (1965)); *Schneider v. Schaaf,* 603 N.W.2d 869, 876 (N.D. 1999) ("[T]o constitute concerted action, the [plaintiffs] were required to present evidence manifesting a common plan to commit a tortious act where the participants knew of the plan and its purpose and took substantial affirmative steps to [harm the plaintiffs]."); *Juhl v. Airington,* 936 S.W.2d 640, 644-45 (Tex. 1996) ("The purpose of the concert of action theory is to deter antisocial or dangerous behavior" and "instances where concert of action liability has been imposed have almost always involved conduct posing a high degree of risk to others.") (citing *Cobb v. Indian Springs, Inc.,* 522 S.W.2d 383, 387 (Ark. 1975) (individual who encouraged another to "see what his car could do" was held liable for encouraging the reckless driving that caused the plaintiff's injuries); and *Kuhn v. Bader,* 101 N.E.2d 322, 327 (Ohio Ct. App. 1951) (two people target shooting with a high powered rifle and a gravel pile as backstop could both be liable when a ricocheting bullet struck the plaintiff)).

ceeded as if they had received no information to that effect from GES. Although the district court correctly noted that GES was not relieved of liability simply because it told the Powerline/VIP representative that the nylon straps would not secure the truss, the district court applied the concerted acts exception of NRS 41.141(5)(d) in error. GES and Powerline/VIP were merely concurrently negligent in relying upon each other to perform certain acts in erecting the exhibit booth. No evidence in the record suggests that they had any agreement to assemble a booth together, much less an agreement to proceed with joint assembly knowing that the truss was likely to collapse. Consequently, joint and several liability for ''concerted action'' was inappropriate.

Therefore, we reverse that portion of the district court's judgment imposing joint and several liability on GES. Under NRS 41.141(4), GES is severally liable for its portion of the damages awarded based upon the percentage of fault assessed by the jury in its special verdict, *i.e.,* twenty-five percent.

## CONCLUSION

In sum, the district court properly refused to find immunity under the Nevada Industrial Insurance Act. The court, however, improperly imposed joint and several liability upon GES and Powerline/VIP under the ''concerted acts'' exception to NRS 41.141(4)(d).[19] We therefore reverse that portion of the judgment pertaining to joint and several liability and remand this matter for entry of an amended judgment consistent with the views expressed in this opinion. The judgment is affirmed in all other respects.

---

[19]Our ruling today renders moot issues relating to the finding below that the Powerline/VIP settlement was entered into in good faith. Accordingly, we dismiss that portion of GES's appeal relating to the district court's post-judgment settlement order. We have also examined appellant's other assignments of error and conclude that they lack merit.