131 Nev., Advance Opinion 47

IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| D & D TIRE, INC., A NEVADA CORPORATION D/B/A PURCELL TIRE & RUBBER COMPANY, A FOREIGN CORPORATION; PURCELL TIRE COMPANY, INC., A FOREIGN CORPORATION; AND RYAN WINTLE, Appellants, vs. JACK R. OUELLETTE, Respondent. | No. 63810 **FILED** JUL 0 2 2015 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY S. Young DEPUTY CLERK |

Appeal from a district court judgment following a jury verdict and a post-judgment order denying judgment as a matter of law and a new trial in a personal injury action. Second Judicial District Court, Washoe County; Janet J. Berry, Judge.

*Affirmed.*

Holland & Hart LLP and J. Stephen Peek and J. Robert Smith, Reno; Thorndal, Armstrong, Delk, Balkenbush & Eisinger and Charles L. Burcham and Kevin A. Pick, Reno,
for Appellants.

Bradley, Drendel & Jeanney and William C. Jeanney, Reno,
for Respondent.

_____

BEFORE SAITTA, GIBBONS and PICKERING, JJ.

SUPREME COURT OF NEVADA

(O) 1947A

11/6/15: Corrected per letter to publishers. CT

15-20189

*OPINION*

By the Court, SAITTA, J.:

In Nevada, employers and coemployees of a person injured in the course of employment are immune from liability for the injury under the exclusive remedy provision of the workers' compensation statutes. Additionally, some subcontractors and independent contractors are accorded the same status as employers or coemployees of the injured employee and are thus immune from liability. However, a subcontractor or independent contractor is not considered to be a statutory employee when it is performing a major or specialized repair that the injured worker's employer is not equipped to handle with its own work force. This opinion addresses when an independent contractor's actions are within the scope of a major or specialized repair so as to prevent it from claiming immunity as a statutory employer or coemployee.

We hold that when evaluating whether an independent contractor's actions are within the scope of a major or specialized repair, a district court must consider the act giving rise to the injury within the entire context of the overall specialized repair and not in isolation. Thus, factors such as whether the presence of the contractor at the job site was for the purpose of the specialized repair or whether the activity was in furtherance of the specialized repair can help guide the court's analysis. We further hold that where, as in this case, the jury is instructed on negligence, proximate cause, and the essentiality of a finding of the defendant's negligence, an incomplete "mere happening" jury instruction may be duplicative and/or confusing, and thus, the district court's failure to give such an instruction was not an abuse of discretion.

## FACTUAL AND PROCEDURAL HISTORY

Respondent Jack R. Ouellette was employed by Allied Nevada Gold Corporation (Allied) to perform tire service work, including the installation, removal, repair, and replacement of tires on various pieces of mining equipment. Appellant Purcell Tire & Rubber Company is a commercial tire retailer.[1] Among other things, it provides tire changing and repair services to mining companies.

As part of his job, Ouellette drove and operated a tire changing boom truck owned by Purcell and leased to Allied. When a problem developed with the boom truck's power take off unit (PTO), Purcell contacted an independent repair company, Dakota Diesel, who sent repairman Scott Durick to make specialized repairs to the PTO. Purcell, as owner of the truck, also sent Ryan Wintle, a tire technician for Purcell with responsibilities similar to those of Ouellette, to assist with the repairs.

After the initial repairs were completed, Wintle and Durick filled the truck with hydraulic oil. Wintle then got into the truck to move it to another area before testing the PTO. While backing up the truck, Wintle struck and pinned Ouellette against a dumpster, causing Ouellette to suffer a shoulder injury.

Ouellette filed a personal injury claim against Purcell. At trial, Purcell moved for a judgment as a matter of law on the grounds that it was a statutory employee of Allied and was thus immune from liability under the Nevada Industrial Insurance Act (NIIA). The district court

---

[1]Appellants D & D Tire, Inc., and Purcell Tire Company, Inc., are subsidiaries of Purcell Tire & Rubber Company (collectively, Purcell).

 

denied Purcell's motion. Purcell also requested a mere happening jury instruction, which the district court declined to give.

The jury returned a verdict in favor of Ouellette. Purcell then renewed its motion for judgment as a matter of law on the grounds that it was a statutory employee of Allied. Alternatively, it moved for a new trial, arguing that the district court's error in refusing to give Purcell's mere happening jury instruction materially affected its substantial rights. The district court denied Purcell's motion. Purcell now appeals.

## DISCUSSION

Purcell argues that the district court erred in denying its motion for judgment as a matter of law because Purcell was a statutory employee of Allied at the time of Ouellette's injury and would thus be immune from liability for the injury under the NIIA. Purcell also argues that the district court abused its discretion by refusing to give a mere happening jury instruction.

Ouellette argues that the district court did not err in denying Purcell's motion for judgment as a matter of law because Purcell was performing a specialized repair at the time of Ouellette's injury and thus was not a statutory employee of Allied. Ouellette also argues that the district court did not err in refusing to give Purcell's proffered jury instruction because it misstated Nevada law and was adequately covered by other instructions given to the jury.

*The district court did not err by denying Purcell's motion for judgment as a matter of law*

NRCP 50(a)(1) provides that a district court may grant judgment as a matter of law "with respect to a claim or defense that cannot under the controlling law be maintained or defeated." In deciding a motion for judgment as a matter of law, "[t]he [district] court must view

all evidence and inferences in favor of the nonmoving party." *FGA, Inc. v. Giglio*, 128 Nev., Adv. Op. 26, 278 P.3d 490, 500 (2012). Thus, a nonmoving party can defeat a motion for judgment as a matter of law if it "present[s] sufficient evidence such that the jury could grant relief to that party." *Bielar v. Washoe Health Sys., Inc.*, 129 Nev., Adv. Op. 49, 306 P.3d 360, 368 (2013) (internal quotations omitted).

We review a district court's order granting or denying judgment as a matter of law and its interpretation of a statute de novo. *Wyeth v. Rowatt*, 126 Nev. 446, 460, 244 P.3d 765, 775 (2010) (reviewing judgment as a matter of law de novo); *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008) (reviewing statutory interpretation de novo).

*An independent contractor is not immune from liability when performing specialized repairs*

In Nevada, employers and coemployees of a person injured in the course of employment are immune from liability under the NIIA. NRS 616B.612; *Lipps v. S. Nev. Paving*, 116 Nev. 497, 501, 998 P.2d 1183, 1186 (2000) (noting that coemployees are immune from liability for injuries incurred by other employees during the course of employment under NRS 616B.612(3), NRS 616A.020(1), and NRS 616C.215(2)(a)). Additionally, the NIIA is "uniquely different from industrial insurance acts of some states in that sub-contractors and independent contractors are accorded the same status as employees" and are immune from liability. *Meers v. Haughton Elevator*, 101 Nev. 283, 285, 701 P.2d 1006, 1007 (1985) (internal quotations omitted) (interpreting a prior version of NRS 616C.215); *see also* NRS 616A.210(1) ("[S]ubcontractors, independent contractors and the employees of either [are] deemed to be employees of the principal contractor for the purposes of [the NIIA].").

However, not all types of subcontractors and independent contractors are considered to be statutory employees under NRS 616A.210. *Id.* A subcontractor or independent contractor is not a statutory employee if it "is not in the same trade, business, profession or occupation as the [employer of the injured worker]." *See* NRS 616B.603(1)(b); *Hays Home Delivery, Inc. v. Emp'rs Ins. Co. of Nev.*, 117 Nev. 678, 682, 31 P.3d 367, 369-70 (2001) (noting that NRS 616B.603 codifies the *Meers* test, discussed below, which is used to "determine[ ] whether independent contractors are 'employees' under the NIIA").

The "normal work" test, first articulated in *Meers*, guides courts as to whether a subcontractor or independent contractor is considered to be in the same trade, business, profession, or occupation as the employer of an injured worker. *See Hays Home Delivery, Inc.*, 117 Nev. at 682-83, 31 P.3d at 369-70 (2001). The *Meers* normal work test is

> not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether that indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

101 Nev. at 286, 701 P.2d at 1007 (internal quotations omitted); *see also Oliver v. Barrick Goldstrike Mines*, 111 Nev. 1338, 1349, 905 P.2d 168, 175 (1995) (holding that the "same trade" language in NRS 616.262, replaced by NRS 616B.603, refers to the *Meers* test). With regard to subcontracted maintenance activities, "[t]he general rule is that major repairs, or specialized repairs of the sort which the employer is not equipped to

handle with his own force, are held to be outside his regular business." *Meers*, 101 Nev. at 286, 701 P.2d at 1007-08 (internal quotations omitted).

### *Purcell's interpretation of the Meers normal work test is incorrect*

Purcell concedes that the job of repairing the truck's PTO would be considered a specialized repair under *Meers*. However, it argues that Dakota Diesel performed the specialized repair, while Wintle was merely there to "monitor the repair process." Purcell further argues that even if Wintle was performing a specialized repair on the day of Ouellette's injury, Wintle was not performing a specialized repair at the time Ouellette was actually injured.

In making its argument, Purcell contends that the focus of the normal work test is on the work being performed at the time the injury occurred. Therefore, because Wintle was moving the tire changing boom truck at the time of Ouellette's injury, which was work normally performed by employees of Allied, Purcell argues that Wintle was not performing a specialized repair at the time of Ouellette's injury. In support of its argument, Purcell relies on *State Industrial Insurance System v. Ortega Concrete Pumping, Inc.*, which held that under the normal work test, "the relevant factual inquiry . . . is whether [the contractor who caused the accident] was in the 'same trade, business, profession or occupation' as [the injured employee] *at the time of the accident*." 113 Nev. 1359, 1363-64, 951 P.2d 1033, 1036 (1997) (emphasis added). Purcell also relies on *Employers Insurance Company of Nevada v. United States*, which held that a principal contractor was immune under the NIIA as the statutory employee of the subcontractor because the work that the subcontractor "was performing *at the time of his injury*" was

Supreme Court
OF
Nevada

(O) 1947A

normally carried out by the principal contractor. 322 F. Supp. 2d 1116, 1118 (D. Nev. 2004) (emphasis added).

We reject Purcell's narrow interpretation of the *Meers* normal work test. Purcell effectively argues that the relevant inquiry under *Meers* is whether, at the *exact moment* of an employee's injury, the activity being performed by the subcontractor or independent contractor was normally performed by the injured worker's employer. Purcell misstates the holdings of *Ortega* and *Employers Insurance Company*. In *Ortega*, this court found the district court's failure to apply the *Meers* test was error, and we reversed and remanded so that it could apply the proper analysis. 113 Nev. at 1364, 951 P.2d at 1036. Because the *Ortega* court did not actually apply the *Meers* normal work test, its holding is inapposite to the current case. *Id.* And in *Employers Insurance Company*, the district court examined whether the defendant was the statutory employer "at the time of the accident" by examining the circumstances surrounding the employment, not the acts at the exact moment of the injury. 322 F. Supp. 2d at 1118. Thus, nothing in the reasoning of either case supports Purcell's contention.

Furthermore, Purcell's narrow interpretation could readily create absurd results. Under Purcell's reasoning, the status of a worker performing specialized repairs would change from moment-to-moment depending on whether that particular task is normally performed by employees of the primary contractor. For instance, repairing an engine valve on a vehicle might be considered a specialized repair, but checking the oil level afterwards would not be if the primary contractor's employees normally check the oil level of the vehicles they are driving. Thus, the status of the work that an independent contractor is performing could

repeatedly alternate between a specialized repair and something else during the same overall repair.

*Wintle was performing a specialized repair at the time of Ouellette's injury*

In rejecting Purcell's narrow interpretation of *Meers*, we hold that in order to determine whether a subcontractor or independent contractor was engaged in a specialized repair under the *Meers* test, and therefore whether that subcontractor or independent contractor is liable for any injuries caused to workers during the course of that specialized repair, the court must consider the subcontractor or independent contractor's activity leading to a worker's injury within the context of their other actions, both before and after the injury, and not in isolation. In this case, we hold that Wintle's presence at the mine for the purpose of a specialized repair was sufficient to establish that he was not acting as an employee of Allied at the time of the injury.

Wintle was at the mine on the day of Ouellette's injury because the truck's PTO required specialized repair. Purcell sent Wintle to the site specifically to accompany Durick, who was hired to make those specialized repairs.[2] Even if Wintle's only purpose at the mine that day was to "monitor the repair process" of the truck, as Purcell claims, Wintle was nonetheless there for the sole purpose of the specialized repair. To put it another way, Wintle would not have been at the mine that day *but for* the specialized repair. Because Wintle was at the mine on the day of Ouellette's injury for the purpose of a specialized repair, we hold that

---

[2]When asked why he was at the mine on the day of the accident, Wintle testified that he went there "to assist and facilitate Mr. Durick in repairs to the 508 boom truck."

there was sufficient evidence for the jury to find that Wintle and Purcell were performing a specialized repair under *Meers* at the time of Ouellette's injury, and were therefore not statutory employees of Allied under NRS 616B.603 and NRS 616A.210.

Even under Purcell's narrow interpretation of *Meers*, we hold that, when looked at in context, Wintle would still have been acting in furtherance of the specialized repair at the time of Ouellette's injury and thus be considered to be performing a specialized repair under *Meers*. Wintle arrived at the mine with Durick, the Dakota Diesel repairman Purcell had engaged to perform the specialized repair work. Both Durick and Wintle testified that Wintle actively assisted Durick in the specialized repair. Wintle testified that "[he] was going out to assist and facilitate . . . Durick in repairs to the 508 boom truck." Durick testified that Wintle assisted him in his work on the truck, stating that

> [Wintle and I] had to drain all of the hydraulic oil. We drained the transmission fluid out, removed the hydraulic pump, and the power takeoff unit, mounted the new one on, had to do some setup procedure on it, got that all mounted, filled the tranny back full of oil, and remounted the hydraulic pump.

After Durick and Wintle performed the initial repairs, they "got to a point where [they] needed hydraulic oil" and drove the truck from the tire pad to the shop where the hydraulic oil was kept. After filling the truck with hydraulic oil, Durick testified that he and Wintle were next going to "take pressure checks and . . . were going to operate the crane to make sure it was operating and functioning properly." Ouellette testified that this was to see if the repairs were successful. Wintle then asked Durick if he "wanted to do the pressure checks and the function checks right there," but Durick wanted to first move the truck to the tire pad because the shop

area was congested. Wintle then got into the truck to move it to the tire pad, a move that led to Ouellette's injury.

Thus, while employees of Allied may usually drive the truck and fill it with hydraulic oil, in the context of Wintle's other actions, it is clear that in this case he was acting in furtherance of the overall specialized repair at the time of Ouellette's injury. Therefore, even had evidence not been presented that Wintle was at the mine solely for the purpose of the specialized repair, there was sufficient evidence demonstrating that Wintle was still in the process of performing a specialized repair at the time of Ouellette's accident. Accordingly, Purcell was not a statutory employee of Allied under NRS 616B.603 and NRS 616A.210, and we hold that the district court did not err in denying Purcell's motion for judgment as a matter of law regarding NRS 616B.612's application.

*The district court did not improperly reject Purcell's jury instruction*

We review a decision to admit or refuse jury instructions for an abuse of discretion or judicial error. *Ins. Co. of the W. v. Gibson Tile Co.*, 122 Nev. 455, 463, 134 P.3d 698, 702-03 (2006). We review de novo whether a jury instruction accurately states Nevada law. *Cook v. Sunrise Hosp. & Med. Ctr., LLC*, 124 Nev. 997, 1003, 194 P.3d 1214, 1217 (2008). Although "a party is entitled to jury instructions on every theory of [its] case that is supported by the evidence," *Johnson v. Egtedar*, 112 Nev. 428, 432, 915 P.2d 271, 273 (1996), the offering party must demonstrate that the proffered jury instruction is warranted by Nevada law. NRCP 51(a)(1).

At trial, the district court rejected the following jury instruction offered by Purcell:

The mere fact that there was an accident or other event where someone was injured is not in and of itself a sufficient basis for negligence.

The instruction was based on *Gunlock v. New Frontier Hotel Corporation*, which held, in relevant part, that "[t]he mere fact that there was an accident or other event and someone was injured is not of itself sufficient to predicate liability. Negligence is never presumed but must be established by substantial evidence." 78 Nev. 182, 185, 370 P.2d 682, 684 (1962), *abrogated on other grounds by Foster v. Costco Wholesale Corp.*, 128 Nev., Adv. Op. 71, 291 P.3d 150, 156 (2012).

*The omitted portions of Purcell's jury instruction were adequately covered by other instructions*

While Purcell's proffered jury instruction accurately reflects the first part of the *Gunlock* mere happening instruction, it omits the second part, stating that "[n]egligence is never presumed but must be established by substantial evidence." 78 Nev. at 185, 370 P.2d at 684. Therefore, Purcell's proffered jury instruction, by itself, is an inaccurate statement of Nevada law. However, in civil cases, "if an instruction is not technically correct, the instruction should be examined in the context of all instructions given to the jury" in deciding whether "the jury was sufficiently and fairly instructed." *Gordon v. Hurtado*, 96 Nev. 375, 380, 609 P.2d 327, 330 (1980).

Here, the statement that "[n]egligence is never presumed" is merely a restatement of the first part of the *Gunlock* reasoning presented above, 78 Nev. at 185, 370 P.2d at 684 ("The mere fact that there was an accident . . . is not of itself sufficient to predicate liability."), and the concept that negligence "must be established by substantial evidence" was adequately covered by other jury instructions stating the burden of proof for a claim of negligence; *see, e.g.*, Jury Instruction No. 20 (stating the

elements that Ouellette must prove to prevail on a negligence theory and that those elements must be proven by a preponderance of the evidence). Thus, when taken as a whole with the other jury instructions given by the court, we find that Purcell's proposed jury instruction would have sufficiently and fairly instructed the jury on *Gunlock*'s holding. *See Gordon*, 96 Nev. at 380, 609 P.2d at 330.

### *Purcell's proposed jury instruction was adequately covered by other instructions*

"[T]he number of instructions to be given is discretionary with the court." *Duran v. Mueller*, 79 Nev. 453, 460, 386 P.2d 733, 737 (1963). "If one instruction adequately covers a given theory of liability or defense, it is preferable that the court refuse additional instructions relating to the same theory, though couched in different language." *Id.*

Where other jury instructions "adequately cover[ ] negligence, proximate cause, and the essentiality of a finding of defendants' negligence to permit a verdict for [the] plaintiff," a mere happening instruction is duplicative or confusing. *Gagosian v. Burdick's Television & Appliances*, 62 Cal. Rptr. 70, 73 (Ct. App. 1967); *see also Kennelly v. Burgess*, 654 A.2d 1335, 1341 (Md. 1995) ("Even the use of a proper 'mere happening' instruction can lead to confusion in the minds of jurors . . . ."); *Simmons v. Monarch Mach. Tool Co.*, 596 N.E.2d 318, 324 (Mass. 1992) (holding that a mere happening instruction was redundant to an instruction which stated that "if the defendant acted with reasonable care under the circumstances, then it is not negligent and not liable to the plaintiff even though the plaintiff might have been injured"), *abrogated on other grounds by Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 910 (Mass. 1998).

Here, the district court's jury instructions covered the issues of negligence, proximate cause, and the essentiality of a finding of Purcell's negligence. *See* Jury Instruction No. 18 (stating that Ouellette had the burden to prove that his injury was caused by Purcell's negligence); Jury Instruction No. 20 (stating the elements that Ouellette must prove to prevail on a negligence theory and that those elements must be proven by a preponderance of the evidence); Jury Instructions Nos. 21-26 (defining negligence, contributory negligence, proximate cause, and duty of care). Therefore, the district court did not abuse its discretion by refusing to give Purcell's incomplete mere happening jury instruction. *See Gagosian*, 62 Cal. Rptr. at 73.

## *CONCLUSION*

Because there was sufficient evidence demonstrating that Wintle was present at the mine for the purpose of a specialized repair and acting in furtherance of the specialized repair when he caused Ouellette's injury, Purcell was not immune from liability for Ouellette's injury under NRS 616B.612. Thus, the district court did not err in denying Purcell's motion for judgment as a matter of law. Furthermore, the district court did not abuse its discretion in refusing to give an incomplete mere happening jury instruction because to do so would have been duplicative and/or confusing.

_____, J.
Saitta

We concur:

_____, J.
Gibbons

_____, J.
Pickering