*727 OPINION

Per Curiam:

Jane Doe, a mentally handicapped female, was working for Safeway Stores, Inc., when she was sexually assaulted by Emilio Ronquillo-Nino, who was employed by a company that provided janitorial services at the Safeway where Doe worked. Doe, through her guardian ad litem, filed a complaint against Safeway and Ronquillo-Nino’s employer, Action Cleaning, alleging five causes of action as a result of the sexual assault. The district court granted summary judgment in favor of Safeway, determining that it was immune from suit because of coverage provided by the Nevada Industrial Insurance Act (NHA). The district court also granted summary judgment in favor of Action Cleaning pursuant to NRS 41.745 because it was not liable for intentional torts committed by its employee and because Ronquillo-Nino’s intervening criminal acts were a superseding cause that relieved Action Cleaning of responsibility.
We conclude that the district court properly granted summary judgment in favor of Safeway and Action Cleaning. We also take this opportunity to clarify that the “slightest doubt” standard in our summary judgment jurisprudence is an incorrect statement of the law and should no longer be used when analyzing motions for summary judgment.

FACTS

Safeway hired Doe through the store’s special hiring program to work as a part-time courtesy clerk. Doe’s I.Q. score is in the range of 68-70, qualifying her as mildly mentally retarded. A program offered at Carson High School provided job coaches to assist Doe with the hiring and orientation process, to transport her to and from work, and to provide her with on-the-job training. Doe also received assistance from a job coach at Easter Seals and a vocational rehabilitation counselor provided by the state. Doe was a minor when Safeway initially hired her, but she turned 18 before the events that are the subject of this case.
As a courtesy clerk, Doe bagged groceries, cleaned and replenished supplies at the check stands, cleaned the break room and various public areas of the store, and collected shopping carts from the parking lot. Safeway paid Doe $5.45 an hour, and she received regular paychecks made out in her name. Doe’s employment duties required her to be in many areas of the store, including the *728 outside areas, at various times. She was working the swing shift (4 p.m. to midnight) at the time of the assaults.
Before beginning her employment, Doe attended a daylong orientation session for new employees where she received training specific to her job duties. The orientation also covered information on Safeway’s employment policies, including its policies on sexual harassment in the workplace. One of Doe’s job coaches attended the orientation session with her and helped her to understand the materials and information presented. Doe worked at Safeway part-time during high school and then full-time following her graduation in June 1998.
Doe met Ronquillo-Nino through her employment at Safeway. Ronquillo-Nino worked as a nighttime janitor for Action Cleaning, a cleaning subcontractor hired by Building One Service Solutions (Building One) to provide on-site cleaning services at the Safeway store where Doe worked. Under its contract with Safeway, Building One is an independent contractor.
On three separate occasions Ronquillo-Nino sexually assaulted Doe while she was at work on the Safeway premises. The first assault occurred in a cleaning supply room, and the second and third assaults occurred behind a dumpster while Doe was outside collecting shopping carts from the parking lot. Ronquillo-Nino pleaded guilty to one count of attempted sexual assault.
As a result of the sexual assaults, Doe became pregnant and gave birth to a healthy child, who is now under the care of Doe and Alan and Judy Wood. The Woods and Doe, through her guardian ad litem, (collectively Doe) filed a complaint alleging five causes of action against Safeway and Action Cleaning: (1) negligent failure to train employees and maintain a safe work environment; (2) negligent selection, appointment, training, supervision, and retention of Emilio Ronquillo-Nino; (3) sexual harassment; (4) negligent infliction of emotional distress; and (5) due to the above negligent acts, the Woods are now responsible for the care and maintenance of Jane Doe and her child, Baby Doe.
Safeway and Action Cleaning filed separate motions for summary judgment. The district court granted Safeway’s motion for summary judgment, concluding that Doe’s tort claims against Safeway allege injuries that arose out of and during the course of her employment and therefore her claims are barred by the NIIA, under NRS 616A.020(l)-(2) and NRS 616B.612(4). The district court subsequently granted Action Cleaning’s motion for summary judgment, concluding that Doe’s claims were barred because Ronquillo-Nino’s intervening criminal acts were a superseding cause precluding liability and because, under NRS 41.745, Action Cleaning is not liable for the intentional torts committed by one of its employees. Doe filed a motion for reconsideration, which *729 the district court denied. Doe now appeals the district court’s orders granting summary judgment in favor of Safeway and Action Cleaning.

DISCUSSION

Standard of review

This court reviews a district court’s grant of summary judgment de novo, without deference to the findings of the lower court.[1] Summary judgment is appropriate and “shall be rendered forthwith” when the pleadings and other evidence on file demonstrate that no “genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.”[2] This court has noted that when reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party.[3]
The “slightest doubt” standard
Doe argues on appeal, however, that summary judgment is precluded in the trial court when there is the “slightest doubt as to the operative facts.” The “slightest doubt” standard became part of Nevada’s summary judgment analysis in 1954, when this court quoted language from a federal circuit court’s decision in Doehler Metal Furniture Co. v. United States.[4] Although we have continued to use that standard, courts and commentators have criticized it as unduly limiting the use of summary judgment.[5]
*730 In 1986, the United States Supreme Court decided two cases that undermine the “slightest doubt” standard: Celotex Corp. v. Catrett[6] and Anderson v. Liberty Lobby, Inc.[7] While not addressing the “slightest doubt” standard directly, the Supreme Court in Celotex noted that Rule 56 should not be regarded as a “disfavored procedural shortcut” but instead “as an integral part of the Federal Rules as a whole, which are designed ‘to secure the just, speedy and inexpensive determination of every action.’”[8] In Liberty Lobby, the Supreme Court went further in abrogating the slightest doubt standard when it focused on the rule’s requirement that there be no “genuine” issues of “material” fact:
By its very terms [the summary judgment standard] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
. . . [T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.[9]
Liberty Lobby is incompatible with the slightest doubt standard because colorable evidence may, in any given case, raise doubts as to a factual dispute between the parties while, at the same time, not being probative on the operative facts that are significant to the outcome under the controlling law.[10]
A number of this court’s summary judgment cases employ language that seemingly rejects the slightest doubt standard. This *731 court has often stated that the nonmoving party may not defeat a motion for summary judgment by relying “ ‘ “on the gossamer threads of whimsy, speculation and conjecture.” ’ ”[11] As this court has made abundantly clear, “[wjhen a motion for summary judgment is made and supported as required by NRCP 56, the non-moving party may not rest upon general allegations and conclusions, but must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine factual issue.”[12] The United States Supreme Court employed similar language in Matsushita Electric Industrial Co. v. Zenith Radio.[13]
We take this opportunity to put to rest any questions regarding the continued viability of the “slightest doubt” standard. We now adopt the standard employed in Liberty Lobby,[14] Celotex,[15] and Matsushita.[16] Summary judgment is appropriate under NRCP 56 when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly before the court demonstrate that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.[17] The substantive law controls which factual disputes are material and will preclude summary judgment; other factual disputes are irrelevant.[18] A factual dispute is genuine when the evidence is such that a rational trier of fact could return a verdict for the nonmoving party.[19]
*732 While the pleadings and other proof must be construed in a light most favorable to the nonmoving party, that party bears the burden to “do more than simply show that there is some metaphysical doubt” as to the operative facts in order to avoid summary judgment being entered in the moving party’s favor.[20] The nonmoving party “must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against him.’ ’[21] The nonmoving party ‘“is not entitled to build a case on the gossamer threads of whimsy, speculation, and conjecture.’ ”[22]
To the extent that Doe relies on the “slightest doubt” standard, our discussion above abrogates that standard from Nevada’s summary judgment law and renders her arguments irrelevant.

Summary judgment in favor of Safeway

Applying the summary judgment standard to the case at bar, the relevant inquiry is whether the evidence, when taken in a light most favorable to Doe, the nonmoving party, demonstrates that no genuine issue of material fact remains.
The district court granted summary judgment in favor of Safeway based on its determination that Safeway is immune from suit under the NUA, NRS Chapters 616A to 616D. The NUA provides the exclusive remedy for employees injured on the job, and an employer is immune from suit by an employee for injuries “arising out of and in the course of the employment.”[23] This provision not only bars a suit brought by the employee, but also those by his or her legal representative and dependents.[24] The district court concluded that Doe’s tort claims against Safeway alleged injuries that arose out of and during the course of her employment and her *733 claims were therefore barred under NRS 616A.020(1), (2) and NRS 616B.612(4).[25]

Arising out of and in the course of the employment

Initially, Doe argues that the district court erred in granting summary judgment because it sometimes used the disjunctive “or” as opposed to the conjunctive “and” when construing Safeway’s liability for injuries to employees. While Doe is correct that an employer is relieved of liability only “for personal injuries to employees which arise out of and in the course of employment,” her argument is without merit. First, the district court concluded both that “Doe’s injuries were sustained at work” in the course of employment and that Doe’s injuries also arose out of her employment. Second, Doe’s argument ignores the fact that this court reviews an appeal of summary judgment de novo, without deference to the district court’s decision.[26]
We have recognized that the NHA does not make an employer absolutely liable and, therefore, absolutely immune from suit for any and all on-the-job injuries suffered by its employees.[27] Instead, injuries that fall within the ambit of the NIIA’s coverage are those that both arise out of the employment and occur within the course of that employment.[28] An injury is said to arise out of one’s employment when there is a causal connection between the employee’s injury and the nature of the work or workplace.[29] In contrast, whether an injury occurs within the course of the employment refers merely to the time and place of employment, i.e., whether the injury occurs at work, during working hours, and while the employee is reasonably performing his or her duties.[30]
*734 Here, Doe does not challenge whether her injury occurred in the course of her employment. The record sufficiently establishes that Ronquillo-Nino sexually assaulted Doe while she was at work, during her regular working hours, and while she was performing the duties of her job. In fact, the very basis of Doe’s claim is that Safeway and Action Cleaning are liable because her injury occurred in the course of her employment. The district court properly concluded that Doe’s injuries occurred within the course of her employment.
However, Doe challenges the conclusion that the assault arose out of her employment. To resolve this issue, we must determine whether there is a causal link between Doe’s working at Safeway and the sexual assault by Ronquillo-Nino.[31] Whether a sexual assault results in an injury that arises out of the victim’s employment is an issue of first impression in Nevada. Generally, courts holding that a sexual assault upon an employee arises out of the employment use an incidental or increased risk test that looks to whether the risk of harm is related to the conditions of employment or whether the employment increased the risk to the employee.[32] This test is analogous to the reasoning employed by this court in Cummings v. United Resort Hotels, Inc.[33] and McColl v. Scherer.[34] However, workers’ compensation statutes do not apply “when the animosity or dispute which culminates in the assault is imported into the place of employment from the injured employee’s private or domestic life, ... at least where the animosity is not exacerbated by the employment.’’[35] We affirm the use of this test.
*735 Doe argues that sexual gratification is a personal and private motive and that her rape occurred because of Ronquillo-Nino’s individual attraction to her or because he preyed upon her because of her mental disability.[36] Doe argues that Ronquillo-Nino acted out of personal animosity because his assault was “solely to gratify his own sexual desires” and urges this court to adopt the rule from Villanueva v. Astroworld, Inc.[37]
In Villanueva, the Texas Court of Appeals held that the rape of an amusement park employee by a co-employee raised genuine issues of fact as to whether the victim’s injuries arose out of her employment.[38] The Texas court noted that “ ‘[s]urely it would be going too far to say that every assault arises out of the employment if it can be proved that the acquaintance of the parties came about through the employment.’ ”[39] Then, the court noted that the general rule is that “an injury does not arise out of one’s employment if the assault is not connected with the employment, or is for reasons personal to the victim as well as the assailant.”[40]
Under this formulation of the rule, the exception would swallow the rule. It would be irrelevant whether there is a causal link between the employment and the assault because every sexual assault could be said to arise from privately held motivations. Thus, every sexual assault would fall outside the purview of the NHA, leaving workplace-related sexual assaults uncovered, under the NHA. This *736 court is reluctant to accept such a broad formulation of the rule. Instead, we adopt the rule that the sexual assault of an employee falls within the NIIA if the nature of the employment contributed to or otherwise increased the risk of assault beyond that of the general public.[41] That same assault is not within the NIIA, however, when “the animosity or dispute which culminates in the assault is imported into the place of employment from the injured employee’s private or domestic life, ... at least where the animosity is not exacerbated by the employment.’ ’[42]
It is uncontroverted that Doe’s employment with Safeway brought her into contact with the assailant. While the nature of her work required her to interact with employees and the public, her specific job duties included cleaning various areas of the store and collecting shopping carts from the parking lot. Two of the sexual assaults occurred while she was collecting carts from a lot that was behind or next to the store, and the other in a cleaning supply room that was presumably in an area off limits to the public. As a result, we conclude that Doe’s employment contributed to and increased the risk of assault beyond that of the general public. Her only contact with Ronquillo-Nino was through her employment. Because he worked as a janitor there, he was aware of the store layout and which areas of the store provided vulnerable locations. The sexual assault in this instance was not imported into the workplace or otherwise the result of motivations peculiar to the assailant and the victim that are unrelated to the employment. Therefore, under the contributed to or increased the risk test, Doe’s injury falls within the coverage of the NIIA, and her claims are barred by NRS 616A.020.[43] As such, no genuine issues of material fact remain, and summary judgment was appropriate in this case.[44]

*737
Summary judgment in favor of Action Cleaning

The district court granted summary judgment in favor of Action Cleaning based on dual grounds that (a) under NRS 41.745 an employer is not liable for harm caused by the intentional torts of an employee, and (b) Ronquillo-Nino’s intervening criminal act was a superseding cause that relieved Action Cleaning of liability. Doe challenges both conclusions on the basis that Ronquillo-Nino’s acts were foreseeable given that Action Cleaning’s workforce is highly transient, untrained, largely unsupervised, and “comprised almost entirely of” illegal aliens.

NRS 41.745 as a bar to recovery

NRS 41.745 addresses specific circumstances in which an employer is not liable for harm or injury caused by an employee’s intentional conduct:
1. An employer is not liable for harm or injury caused by the intentional conduct of an employee if the conduct of the employee:
(a) Was a truly independent venture of the employee;
(b) Was not committed in the course of the very task assigned to the employee; and
(c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his employment.
For the purposes of this subsection, conduct of an employee is reasonably foreseeable if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury.
(Emphasis added.)
Before NRS 41.745 was enacted, this court had stated that an employee’s intentional conduct relieves an employer of liability when “the employee’s tort is truly an independent venture of his own and not committed in the course of the very task assigned to him.’ ’[45] This court had also acknowledged that if ‘ ‘the willful tort *738 is committed in the course of the very task assigned to the employee,” then it is appropriate to extend liability to the employer.[46] These two observations are essentially codified in NRS 41.745(l)(a) and (b).
In Prell Hotel Corp. v. Antonacci,[47] this court held an employer vicariously liable when its employee, a blackjack dealer, hit a customer in the face while dealing. The altercation occurred when the customer, who had apparently consumed a number of free drinks, became belligerent and insulted the dealer. The dealer proceeded to deal the next round of cards and then hit the customer without leaving his position behind the blackjack table. This court affirmed a judgment holding the casino liable because the altercation occurred within the scope of the very tasks assigned to the employee, in that particular case dealing blackjack.[48]
In contrast, this court held that the employer was not vicariously liable in J. C. Penney Co. v. Gravelle,[49] when a store clerk assaulted a third-party bystander because the bystander attempted to prevent the clerk from catching a shoplifter whom the clerk had pursued outside of the store. The bystander followed the employee back to the store, and the two continued to argue, resulting in an ensuing altercation where the bystander was injured. This court held that the employer was not responsible because after the clerk had returned to the store and turned over the merchandise, his actions in assaulting the bystander no longer concerned his employment. This court reasoned that based on the circumstances, the assault was “an independent adventure” for the employee’s own purposes and was not taken on the employer’s behalf or arising from a sense of duty to the employer.[50] The distinguishing fact in Gravelle is that the altercation occurred after the clerk returned to the store and returned the stolen merchandise to the manager.
In Rockwell v. Sun Harbor Budget Suites, this court, citing Prell and Gravelle, reversed the district court’s order granting summary judgment in favor of the employer when an off-duty security guard shot and killed a woman on the employer’s premises.[51] We reversed in that case because conflicting evidence raised a genuine issue of material fact concerning whether the off-duty guard was acting within the scope of his employment when the shooting occurred. Specifically, the evidence and affidavits produced by the parties *739 conflicted over whether security guards were required to remain in radio contact with the employer and respond to emergency calls when they were off-duty.[52]
Doe argues that Action Cleaning failed to produce any evidence to meet the first two statutory elements, that the sexual assault was a truly independent venture and was not committed in the course of a task assigned to Ronquillo-Nino. Our review of the record, however, reveals that Doe is wrong. Action Cleaning produced an affidavit stating that it provided janitorial services to Safeway, and it is undisputed that Ronquillo-Nino was employed as a janitor at the Carson City Safeway store. He was not acting on behalf of Action Cleaning when he assaulted Doe, or out of any sense of duty owed to Action Cleaning. The sexual assault was also not committed in the course of the tasks assigned to Ronquillo-Nino as a janitor. Ronquillo-Nino's sexual assault of Doe was an independent venture outside the course and scope of his employment. Therefore, we conclude that Doe's argument must fail and Action Cleaning has met the first two requirements under NRS 41.745.
NRS 41.745 also requires an element of foreseeability, in effect raising the standard and making employers liable only when an employee's intentional conduct is reasonably foreseeable under the circumstances. Doe asserts that the district court erred by focusing its foreseeability inquiry on Ronquillo-Nino's lack of a prior criminal record in the United States or Mexico. According to Doe, Ronquillo-Nino's actions were foreseeable because Action Cleaning's workforce is highly transient and not adequately trained or supervised, and because much of Action Cleaning's workforce, including Ronquillo-Nino, are illegal aliens. Doe argues that Ronquillo-Nino's actions were foreseeable because a reasonable person would not have regarded it as "highly extraordinary" that, given the composition of Action Cleaning's workiorce, its employees would sexually harass "vulnerable females" with whom they come into contact. We conclude that this argument is without merit.
We note first that the "highly extraordinary" standard is an incorrect statement of the law. According to NRS 41.745(1), an employee's conduct "is reasonably foreseeable if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury." We have noted that whether an intentional act is reasonably foreseeable depends on whether *740 one has “ ‘reasonable cause to anticipate such act and the probability of injury resulting therefrom.’ ’ ’[53]
The record reveals no genuine issue of material fact as to the foreseeability of Ronquillo-Nino’s conduct. Ronquillo-Nino had no prior criminal history in the United States or Mexico. Action Cleaning requires applicants to show proof of identification, checks employment references, and completes the proper Immigration and Naturalization forms for every employee. Action Cleaning’s district manager further stated that he had not received complaints of sexual harassment regarding Ronquillo-Nino or any other employee in the past ten years. Under the circumstances of this case, it was not reasonably foreseeable that Ronquillo-Nino would sexually assault a Safeway employee. Moreover, as noted, the assault resulted from Ronquillo-Nino’s independent acts and was not within the course and scope of his employment. Consequently, under NRS 41.745, Action Cleaning is not liable for the intentional conduct of its employee, Ronquillo-Nino, in this case.

The intervening and superseding criminal acts of an employee

For the same reasons, Doe argues that the district court incorrectly found that Ronquillo-Nino’s actions were an intervening *741 cause that relieves Action Cleaning of liability. This court has noted that a negligence action will not stand when there is an intervening cause that in and of itself is “the natural and logical cause of the harm.”[54] An intervening act is a superseding cause only if it is unforeseeable.[55]
The district court cited Kane v. Hartford Accident and Indemnity Co.,[56] for the proposition that a third party’s criminal act is a superseding cause unless it involves a foreseeable hazard to a member of a foreseeable class of victims. In that case, a nurse filed suit after a janitor at the hospital where she worked raped her. The nurse sued the insurance company of the subcontracted janitorial firm that bonded the employees who worked at the hospital. Her suit was based on the insurance company’s failure to properly investigate the janitorial employee who, in that case, had a criminal record involving various property crimes.[57] The California Court of Appeals held that the janitor’s intervening criminal actions were unforeseeable because he had no history of violent crimes.[58]
Doe attempts to distinguish Kane on the ground that the case involved a negligence claim based on a failure to investigate the employee’s background, whereas her claims involve a broader set of actions including negligent hiring, failure to train, and failure to supervise. We conclude that this argument is unpersuasive. The rule that an employee’s superseding actions relieve an employer of liability applies equally to each of the negligence claims alleged in this case. The issue is not what claims were alleged but instead whether the specific crime of sexual assault by one of its employees was reasonably foreseeable to the employer under the circumstances. Having already concluded that Ronquillo-Nino’s criminal actions were not reasonably foreseeable under the circumstances, we similarly conclude that his actions were an intervening superseding act that relieves Action Cleaning of liability in this case. Accordingly, no genuine issues of material fact are present, and the district court properly granted summary judgment in favor of Action Cleaning.

CONCLUSION

We take this opportunity to reject the “slightest doubt” standard previously used in Nevada’s summary judgment law. We conclude *742 that the district court did not err in awarding summary judgment in favor of Safeway and Action Cleaning because there was no genuine issue of material fact. Doe’s injuries from Ronquillo-Nino’s sexual assault arose out of and in the course of her employment, and therefore, the NILA provides the exclusive remedy for Doe’s injuries. Action Cleaning is not responsible for an employee’s actions when those actions were independent of employment, were not committed within the course and scope of employment, and were not reasonably foreseeable under the circumstances. Action Cleaning is also not liable for Ronquillo-Nino’s sexual assault of Doe because his intervening criminal actions were a superseding cause that relieves Action Cleaning of liability.
Accordingly, we affirm the district court’s orders granting summary judgment in this case.

GES, Inc. v. Corbitt, 117 Nev. 265, 268, 21 P.3d 11, 13 (2001) (citing Caughlin Homeowners Ass’n v. Caughlin Club, 109 Nev. 264, 266, 849 P.2d 310, 311 (1993)).

NRCP 56(c); Tucker v. Action Equip. and Scaffold Co., 113 Nev. 1349, 1353, 951 P.2d 1027, 1029 (1997).

Lipps v. Southern Nevada Paving, 116 Nev. 497, 498, 998 P.2d 1183, 1184 (2000) (citing Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985)).

 149 F.2d 130 (2d Cir. 1945), quoted in Parman v. Petricciani, 70 Nev. 427, 436, 272 P.2d 492, 496 (1954).

See, e.g., Chubbs v. City of New York, 324 F. Supp. 1183, 1189 (E.D.N.Y. 1971) (“Since courts are composed of mere mortals they can decide matters only on the basis of probability, never on certainty. The ‘slightest doubt’ test, if it is taken seriously, means that summary judgment is almost never to be used — a pity in this critical time of overstrained legal resources.” (citing Frank, American Law: The Case for Radical Reform 146-52 (1969)); Goodman v. Brock, 498 P.2d 676, 679 (N.M. 1972) (noting that application of the “slightest doubt” standard “has resulted in a disregard of the clear language and a departure from the meaning and purpose of Rule 56(c)”); Hon. Charles E. Clark, Special Problems in Drafting and Interpreting Procedural Codes and *730 Rules, 3 Vand. L. Rev. 493, 504 (1950) (“If this [standard] is to be applied as it is stated, there can hardly be a summary judgment ever, for at least a slight doubt can be developed as to practically all things human.”); Charles A. Wright & Mary K. Kane, Law of Federal Courts 711 (6th ed. 2002) (characterizing the slightest doubt standard as “a rather misleading gloss” on the rule).

 477 U.S. 317 (1986).

 477 U.S. 242 (1986).

 Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

 Liberty Lobby, 477 U.S. at 247-48.

Cf. Schier v. Hertz Corp., 99 Nev. 474, 476, 663 P.2d 1185, 1186 (1983) (reversing summary judgment in favor of a car rental company because the issue in the case was not whether rental company qualified as an insurer under Nevada law but instead whether, under plaintiff’s breach of contract claim, rental company was obligated by the terms of lease agreement to provide liability coverage, which under Nevada law must also include uninsured motorist coverage).

Pegasus v. Reno Newspapers, Inc., 118 Nev. 706, 713-14, 57 P.3d 82, 87 (2002) (quoting Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 442 (1993) (quoting Collins v. Union Fed. Savings & Loan, 99 Nev. 284, 302, 662 P.2d 610, 621 (1983))); Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 110, 825 P.2d 588, 591 (1992) (quoting Collins, 99 Nev. at 302, 662 P.2d at 621).

Pegasus, 118 Nev. at 713, 57 P.3d at 87; see Collins, 99 Nev. at 294, 662 P.2d at 618-19.

 475 U.S. 574, 586 (1986). The Court stated:
When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmov-ing party must come forward with “specific facts showing that there is a genuine issue for trial.” Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no “genuine issue for trial.”
Id. (citations and footnote omitted).

 477 U.S. 242.

 477 U.S. 317.

 475 U.S. 574.

 Pegasus, 118 Nev. at 713, 57 P.3d at 87.

Liberty Lobby, 477 U.S. at 248.

E.g., Matsushita, 475 U.S. at 586; Posadas, 109 Nev. at 452, 851 P.2d at 441-42. We use the term trier of fact here to refer to both the jury and, in a bench trial, the judge.

Matsushita, 475 U.S. at 586.

Bulbman, 108 Nev. at 110, 825 P.2d at 591.

Id. (quoting Collins, 99 Nev. at 302, 662 P.2d at 621).

NRS 616A.020(1), (2); Conway v. Circus Circus Casinos, Inc., 116 Nev. 870, 874, 8 P.3d 839, 839 (2000) (quoting NRS 616A.020(1)); see also NRS 616B.609(l)(a), (b) (noting that the remedies provided under the NILA cannot be modified by a contract of employment, insurance, relief benefit, indemnity, or any other device, and any attempt to do so is void).

NRS 616A.020(1) provides:
The rights and remedies provided in [the NRA] for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive ... of all other rights and remedies of the employee, his personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury.

NRS 616B.612(4) provides that any employer within the provisions of the act “or any insurer of the employer is relieved from other liability for recovery of damages or other compensation for those personal injuries unless otherwise provided by the terms of [the NIIA].”

GES, Inc. v. Corbitt, 117 Nev. 265, 268, 21 P.3d 11, 13 (2001).

Rio Suite Hotel & Casino v. Gorsky, 113 Nev. 600, 605, 939 P.2d 1043, 1046 (1997).

NRS 616A.020(1).

Gorsky, 113 Nev. at 604, 939 P.2d at 1046 (citing Murphy v. Industrial Com’n of Arizona, 11A P.2d 221, 224 (Ariz. 1989)).

Murphy,, 114 P.2d at 225 (noting that when the injury occurs at work, during work hours, and while the employee is engaged in a reasonable activity of his employment, then the injury is said to occur within the course of the employment); see also Doe v. South Carolina State Hosp., 328 S.E.2d 652, 655 (S.C. Ct. App. 1985).

 Cf. Gorsky, 113 Nev. at 604, 939 P.2d at 1046.

E.g., South Carolina State Hosp., 328 S.E.2d at 655 (holding the risk of assault and rape of a female nurse by an escaped mental patient was increased because of the nature or setting of her work); Orr v. Holiday Inns, Inc., 627 P.2d 1193, 1196-97 (Kan. Ct. App. 1981); Commercial Standard Insurance Company v. Marin, 488 S.W.2d 861, 869 (Tex. Civ. Ct. App. 1972); Employers Insurance Company of Alabama v. Wright, 133 S.E.2d 39, 41 (Ga. Ct. App. 1963) (holding the assault and rape of a female clerk at a laundry company arose out of her employment because her employment, which required her to go into a secluded part of the premises and pick up parcels of laundry from customers, created an increased risk of attack). But see Tolbert v. Martin Marietta Corp., 621 F. Supp. 1099 (D. Colo. 1985) (holding the rape of an employee does not arise out of the employment when the assault is neither distinctly associated with the employment nor personal to the employee but rather is directed at the employee because she is a woman).

 85 Nev. 23, 27, 449 P.2d 245, 248 (1969) (noting that when the employment increases the risk of assault beyond that of the general public, an ensuing injury is a compensable workplace injury).

 73 Nev. 226, 315 P.2d 807 (1957).

Marin, 488 S.W.2d at 863; see also McColl, 73 Nev. at 230, 315 P.2d at 809.

Doe argues that statements in Ronquillo-Nino’s deposition suggest that he preyed upon Doe because he believed that she lacked intelligence and was highly vulnerable. When asked about his interactions with Doe, Ronquillo-Nino stated that Doe would ask him to have sex in inappropriate public places where they would likely be seen and that he had heard that she was having sex with other men at work, including his brother. He stated, “I thought that maybe some of the screws needed some tightening” and “what is it with her, is she nuts?” From this, Doe argues that a reasonable juror could conclude that Ronquillo-Nino’s motivations were personal to Doe and unrelated to her employment. Ronquillo-Nino’s statements taken as a whole do not imply what Doe avers, that Ronquillo-Nino preyed upon Doe because of her mental infirmities.

 866 S.W.2d 690 (Tex. Ct. App. 1993); cf. Heitman v. Bank of Las Vegas, 87 Nev. 201, 203, 484 P.2d 572, 573 (1971) (holding that when an employee is shot because of a personal grudge, animosity or other personal motivation having nothing to do with her employment, the NHA does not bar the suit, but when an employee is injured merely because she happened to be at work when the incident occurred, the NHA covers the circumstances (citing McColl v. Scherer, 73 Nev. 226, 315 P.2d 807 (1957))).

 866 S.W.2d at 695.

Id. (quoting A. Larson, The Law of Workmen’s Compensation § 11.22 (1992)).

Id. (citing Highlands Underwriters Insurance Co. v. McGrath, 485 S.W.2d 593, 595 (Tex. Civ. Ct. App. 1972)).

E.g., South Carolina State Hosp., 328 S.E.2d at 655; Wright, 133 S.E.2d at 41; cf. Cummings, 85 Nev. at 27, 449 P.2d at 248.

Marin, 488 S.W.2d at 863; cf. Heitman, 87 Nev. at 203-04, 484 P.2d at 573; McColl, 73 Nev. at 230, 315 P.2d at 809.

In light of Safeway’s argument that it is immune from suit under the NIIA for Ronquillo-Nino’s workplace sexual assault, it will be estopped from arguing that her injuries are not covered under a workers’ compensation claim. In holding that the sexual assault and any injuries therefrom fall within the NIIA, we necessarily conclude that ongoing injuries that are the direct result of Ronquillo-Nino’s sexual assault may be covered under the NIIA.

Doe argues that the district court erred by finding that she was only “mildly mentally retarded”; however, that statement is supported by Judy Wood’s own testimony. In addition, Doe notes that the district court emphasized that Safeway provided Doe with training and materials concerning sexual assault and disregarded evidence that Doe likely could not have read or understood those materials on her own. Doe points out that the district court concluded that she failed to adequately inform anyone of the assaults even though deposition testimony suggests that she approached three different Safe *737 way employees and attempted to discuss the issue with them. From these facts, Doe argues that genuine issues remain and summary judgment was inappropriate. We conclude, however, that the facts and inferences, even when taken in a light most fovorable to Doe, are irrelevant to the dispositive issue in this case; which is the NUA’s coverage and whether it bars recovery because her injuries arose out of and in the course of her employment. Having concluded that no genuine dispute remains on facts related to the NIIA’s coverage, we conclude that summary judgment is appropriate in this instance.

Prell Hotel Corp. v. Antonacci, 86 Nev. 390, 391, 469 P.2d 399, 400 (1970) (citing Chapman v. City of Reno, 85 Nev. 365, 455 P.2d 618 (1969); J. C. Penney Co. v. Gravelle, 62 Nev. 439, 449-50, 155 P.2d 477, 481-82 (1945)).

Id.

 86 Nev. at 390, 469 P.2d at 399.

Id. at 392, 469 P.2d at 400.

 62 Nev. 439, 155 P.2d 477.

Id. at 447-49, 155 P.2d at 481-82.

 112 Nev. 1217, 1225-26, 925 P.2d 1175, 1180-81 (1996).

Id.

Rockwell, 112 Nev. at 1228-29, 925 P.2d at 1182 (quoting Thomas v. Bokelman, 86 Nev. 10, 13, 462 P.2d 1020, 1022 (1970), and discussing foreseeability for the intentional acts of a third party in the context of premises liability). The California Court of Appeal has explained “foreseeability” in the context of respondeat superior as follows:
One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, “foreseeability” in this context must be distinguished from “foreseeability” as a test for negligence. In the latter sense “foreseeable” means a level of probability which would lead a prudent person to take effective precautions whereas “foreseeability” as a test for respondeat superior merely means that in the context of the particular enterprise an employee’s conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer’s business. In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one “that may fairly be regarded as typical of or broadly incidental” to the enterprise undertaken by the employer.
Under the modem rationale for respondeat superior, the test for determining whether an employer is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers’ compensation cases for determining whether an injury arose out of or in the course of employment.
Rodgers v. Kemper Construction Co., 124 Cal. Rptr. 143, 148-49 (Ct. App. 1975) (citations omitted). This court quoted a portion of the above language with approval in State, Department Human Resources v. Jimenez, 113 Nev. 356, 365, 935 P.2d 274, 279-80 (1997). However, that opinion was later withdrawn based on a voluntary stipulation to dismiss the case. State, Dep’t Hum. Res. v. Jimenez, 113 Nev. 735, 941 P.2d 969 (1997).

Thomas v. Bokelman, 86 Nev. 10, 13, 462 P.2d 1020, 1022 (1970).

Id.; see also Vallery v. State, 118 Nev. 357, 375, 46 P3d 66, 78 (2002) (relying on Thomas in addressing criminal causation).

 159 Cal. Rptr. 446, 451 (Ct. App. 1979).

Id. at 446-48.

Id. at 451.