177 P.3d 1054 (2008)
Leroy LOOMIS and David R. Shanahan, Appellants,
v.
Jerry Carr WHITEHEAD, d/b/a Thorpe Creek Ranches, Respondent.
No. 47362.
Supreme Court of Nevada.
February 28, 2008.
Wilson Barrows & Salyer, Ltd., and Stewart R. Wilson, Elko, for Appellants.
Kenneth R. Bick, Reno, for Respondent.
Before the Court En Banc.

OPINION
PER CURIAM:
In this appeal, we address whether NRS 602.070 bars the partners of an unregistered fictitious name partnership from bringing an action arising out of a business agreement that was not made under the fictitious name. NRS 602.070 prohibits persons who fail to *1055 file an assumed or fictitious name certificate from suing on any contract or agreement made under the assumed or fictitious name. We conclude that NRS 602.070 does not bar the partners from bringing the action so long as the partners did not conduct the business or enter into an agreement under the fictitious name or otherwise mislead the other party into thinking that he was doing business with some entity other than the partners themselves.

BACKGROUND FACTS
Appellants Leroy Loomis and David R. Shanahan raised and sold cattle in Elko County, Nevada. Each of the appellants had certain responsibilities relating to the cattle business. Loomis supplied the livestock and paid expenses, while Shanahan managed the day-to-day care of the cattle. Once the cattle were readied for market and sold, Loomis and Shanahan would share the profits equally. While Loomis and Shanahan often called themselves the 52 Cattle Company, they had no formal partnership agreement and did not file an assumed or fictitious name certificate in that name. Loomis and Shanahan bring this appeal after an agreement entered into with respondent Jerry Carr Whitehead failed.
In the fall of 2003, as winter approached, Shanahan entered into a verbal agreement with Whitehead, a rancher, through Whitehead's ranch foreman. Pursuant to the agreement, Whitehead would feed and otherwise look after the cattle during the upcoming winter, in exchange for which he would receive a fee. Shanahan placed the cattle, many with ear tags bearing Loomis's name, on Whitehead's ranch.
Neither Loomis nor Whitehead was present when the ranch foreman made the deal with Shanahan, but the parties agree that there was no mention of the 52 Cattle Company at the time they entered into the agreement or anytime during the course of the business agreement thereafter. Based upon what he had heard from his foreman, Whitehead thought that Shanahan was the owner of the cattle. Later, Whitehead noticed Loomis's name on the ear tags and became concerned about who would be responsible for his payment for the cattle's care. Thereafter, in a telephone conversation, Loomis spoke to Whitehead, explained his relationship with Shanahan, and provided Whitehead with a letter confirming specific payment arrangements for his services.
Soon winter came upon the range. Shanahan went to Whitehead's ranch to check on the cattle. He found 35 cattle and 54 calves dead, apparently from starvation, and the rest of the cattle emaciated. Following this discovery. Loomis and Shanahan removed their cattle from Whitehead's ranch. The record indicates that Whitehead was, however, paid in full for his services up to that point.
Suit against Whitehead
The following summer, Shanahan and Loomis sued Whitehead, claiming negligence and breach of contract.[1] Later, well into discovery, Whitehead was made aware of the existence of the 52 Cattle Company, when Shanahan stated in his deposition that he did not actually own any of the cattle on Whitehead's ranch. In his deposition, he described the partnership arrangement. At about the same time, Whitehead learned that the name "52 Cattle Company" was not registered with the Elko County Clerk.
Whitehead then filed a motion for partial summary judgment, asserting that, pursuant to NRS 602.070, Loomis and Shanahan's failure to register their fictitiously named partnership with the county clerk barred them from bringing a legal action. The district court agreed with Whitehead, granted the motion, and dismissed Loomis and Shanahan's claims. Loomis and Shanahan timely appealed.[2]

*1056 DISCUSSION

The district court found that Loomis and Shanahan conducted business under a fictitious name without filing a fictitious name certificate with the Elko County Clerk as required by NRS 602.010.[3] The district court therefore concluded that, pursuant to NRS 602.070, they were barred from bringing an action against Whitehead because they did not file a fictitious name certificate for the 52 Cattle Company.
Loomis and Shanahan contend that the district court erred in granting partial summary judgment because they did not enter into a contract with Whitehead under the name of the 52 Cattle Company, and they did not conduct business with Whitehead under that name. Loomis and Shanahan argue that NRS 602.070 is not applicable to their action against Whitehead because they did not mislead Whitehead into thinking that he was doing business with anyone other than them. We agree.
Standard of review
This court reviews a district court order granting summary judgment de novo, without deference to the district court's findings.[4] We have held that "[s]ummary judgment is appropriate under NRCP 56 when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly before the court demonstrate that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law."[5] Whether factual disputes are material depends upon the substantive law involved.[6]
NRS 602.070
This case turns on the language of NRS 602.070, which provides as follows:
Commencement of action barred when certificate not filed. No action may be commenced or maintained by any person, mentioned in NRS 602.010, or by an assignee of such a person, upon or on account of any contract made or transactions had under the assumed or fictitious name, or upon or on account of any cause of action arising or growing out of the business conducted under that name, unless before the commencement of the action the certificate required by NRS 602.010 has been filed.
(Emphases added.)
When looking at a statute's language, this court is bound to follow the statute's plain meaning, unless the plain meaning was clearly not intended.[7] Here, in using the phrase "under the assumed or fictitious name," the statute clearly bars bringing an action when the claims arise from a contract, transaction, or business conducted beneath the banner of an unregistered fictitious name.[8] However, NRS 602.070 does not apply to individual partners whose transactions or business with another party were not performed under the fictitious name.[9]
Here, Whitehead knew that Shanahan entered into the oral contract under his own name. He initially thought that Shanahan *1057 owned the cattle and Loomis had "some type of interest." Shanahan did not enter into the contract under the fictitious "52 Cattle Company" name. Moreover, Whitehead does not allege that he was misled by either Loomis or Shanahan in any way that would cause him to think he was doing business with the 52 Cattle Company. In fact, Whitehead did not know of the 52 Cattle Company until Shanahan mentioned it in his deposition. Under these circumstances, when there simply was no indication that Loomis and Shanahan represented that they were conducting business as the 52 Cattle Company and no reliance by Whitehead that he was doing business with the 52 Cattle Company, NRS 602.070 does not bar the suit against Whitehead.[10]
This court has previously considered the matter of individual partners' standing in the context of NRS 602.070. In Brad Associates v. Nevada Federal Financial, this court concluded that failure to register with the county clerk does not automatically bar partners from commencing suit for claims arising out of their business.[11]
Brad Associates v. Nevada Federal Financial
In Brad, individual partners in a real estate venture, along` with the partnership itself, filed suit against their lender. The partnership conducted the business of the enterprise under the fictitious name "Brad Associates." The district court dismissed the action under NRS 602.070 because the partners had failed to file a fictitious name certificate for the partnership, as required under NRS 602.010, containing the names and places of residence of the partners, as described in NRS 602.020. The district court reasoned that the action could not be maintained because the cause of action arose out of partnership affairs. The Brad majority reversed the dismissal of the action as to the partnership because the lender knew exactly with whom it had done business and the certificate would have provided no additional information beyond that available to the lender at all times during the course of its dealings with the partners and the partnership. The majority in Brad concluded that enforcing NRS 602.090 in that instance would classically exalt "form over substance,"[12] given that the purpose of the fictitious name statutes was "to prevent, fraud and to give the public information about those entities with which they conduct business."[13] The Brad majority also went on to reverse the district court's dismissal order as to the individual partners on the ground that the lender had dealt directly with each partner and because NRS 602.010 did not apply to situations in which individual partners personally contracted with a third party.
Although the Brad majority did not undertake an ambiguity analysis in construing NRS 602.010, NRS 602.020, and NRS 602.070, when read together, these statutes are ambiguous when applied to a partnership business that is not conducted solely through the fictitious name. However, Brad correctly resolved the ambiguity with regard to actions prosecuted by individual partners in connection with partnership affairs. In this, the Brad majority properly looked to the purpose of the statute to achieve the result that the statute was designed to effect fraud prevention and the provision of public information. Having said this, we now restrict the reach of that decision as urged by Justice Young in his separate dissent. Maintenance of an action by an unregistered partnership, if the business was conducted under the partnership's name, as pointed out by Justice Young, clearly violates NRS 602.070.
We therefore reverse the district court's partial summary judgment in this instance and remand for trial because, while the lawsuit between Loomis and Whitehead involved partnership business, the transaction at issue was not conducted and the subsequent suit was not maintained under the aegis of the fictitiously named partnership.
HARDESTY, J., dissenting:
The majority holds that Shanahan and Loomis's causes of action are not barred by *1058 NRS 602.070 because Whitehead (1) entered into a contract with one of the partners of 52 Cattle Company, not the partnership, and (2) was not misled by either of the two partners into thinking he was doing business with 52 Cattle Company. I must dissent because the majority misapplies an unambiguous statute, misapprehends the record before the district court, and, confusingly, adopts the bright line test from the dissent in Brad Associates v. Nevada Federal Financial[1] to resolve fictitious firm name registration violations but then applies the majority rule in Brad Associates to this case.
NRS 602.070 precludes any person doing business under an unregistered fictitious name from commencing or maintaining (1) any action on a contract made in the fictitious name or (2) "any cause of action arising or growing out of the business conducted" under the fictitious name.[2] The second prohibition contained in NRS 602.070, not the first, applies to the facts of this case.
The record below demonstrates that Shanahan and Loomis's claims against Whitehead arose or grew out of "the business" conducted under 52 Cattle Company. Shanahan and Loomis were deposed after the joint case conference report was filed in the district court. According to this testimony, since approximately 1983, Shanahan and Loomis have been partners doing business as 52 Cattle Company for the purpose of buying, running, and selling cattle. Under the terms of their oral partnership agreement, Shanahan would manage the cattle, Loomis would pay all costs, the parties would generally share decision-making, and the net profits resulting from cattle sales would be split equally. While Shanahan made the agreement with Whitehead's foreman in this case, it is clear he did so on behalf of the 52 Cattle Company partnership. In his deposition, Shanahan stated that he did not have any of his own cattle on Whitehead's ranch and the 52 Cattle Company brand was owned by Loomis.
Based on the deposition testimony, Whitehead filed a motion for summary judgment, seeking dismissal of any claims by Shanahan individually because Shanahan had admitted that he did not own any cattle placed on Whitehead's ranch. In opposition, Shanahan and Loomis agreed that the cattle at issue were partnership cattle bearing the "52" brand. Shanahan conceded in his opposition to Whitehead's motion for summary judgment that, but for the existence of the 52 Cattle Company partnership, Shanahan would not have a claim against Whitehead. However, Shanahan and Loomis argued that "it is obvious that Shanahan has a 50% partnership interest in the cattle" and, under the Nevada Uniform Partnership Act in effect at the time this action arose, partners were required to sue as individuals to enforce a partnership claim.[3] Contrary to the assertion by the majority that "Shanahan entered into the oral contract under his own name,"[4] the record demonstrates that Shanahan does not maintain an individual claim. Rather, Shanahan and Loomis argued that summary judgment against Shanahan must be denied because the partners were enforcing the partnership claim against Whitehead.
In response to Shanahan and Loomis's opposition to Whitehead's motion for summary judgment, Whitehead voluntarily withdrew the motion and filed a new motion for summary judgment, seeking dismissal of both Shanahan and Loomis's claims, under NRS 602.070, because their claims arose or grew out of the business of the 52 Cattle Company, an unregistered fictitious name. Based on *1059 facts admitted by Shanahan and Loomis in deposition testimony and in opposition to Whitehead's first motion for summary judgment, the complaint is barred by the second prohibition contained in NRS 602.070. On this record, the district court correctly granted summary judgment against Shanahan and Loomis.
Applying the holding in Brad Associates, the majority also reverses summary judgment because Whitehead did not allege that he was misled by either Shanahan or Loomis into thinking he was doing business with the 52 Cattle Company.[5] I would take this opportunity to overrule Brad Associates to the extent that it bases the enforcement of NRS 602.070 on whether the purpose of the fictitious name statute has been satisfied rather than its plain and unambiguous terms.[6] The Brad Associates court violated a fundamental tenet of statutory construction by examining the purpose of NRS 602.070 without first declaring that the statute was ambiguous.[7] In his dissent in Brad Associates, Justice Young observed that NRS 602.070 plainly and unambiguously mandates that an action not be commenced or maintained unless a fictitious name certificate has been filed.[8] The Legislature has determined the consequences that result from a business's failure to file a fictitious name certificate, and we should not alter those consequences by focusing on the statute's purported purpose rather than its unambiguous mandate.
The majority in this case repeats the same analytical defect committed by the court in Brad Associates. Without describing the alleged ambiguity, the majority simply declares that NRS 602.010, NRS 602.020, and NRS 602.070, when read together, "are ambiguous when applied to a partnership business that is not conducted solely through the fictitious name."[9] This conclusion is itself ambiguous because it does not spell out what parts of these statutes are "ambiguous" when read together and what reasonable alternative interpretations exist. Nevertheless, and without explanation, the majority then adopts the rule urged by Justice Young in his dissent in Brad Associates, stating that "[m]aintenance of an action by an unregistered partnership, if the business was conducted under the partnership's name . . . clearly violates NRS 602.070."[10] Having now adopted this bright line test, the majority, confusingly, fails to apply the rule to this case.
To echo Justice Young's lament in Brad Associates, in this case, the majority once again fails "to give practitioners and district judges any guidance whatsoever as to when NRS Chapter 602 will apply."[11]
For these reasons, I dissent.
NOTES
[1] Two other plaintiffs were involved in Loomis and Shanahan's suit against Whitehead; those plaintiffs are not involved in this appeal.
[2] Because the district court's partial summary judgment pertained only to Loomis and Shanahan's claims and the' other plaintiffs' claims remained pending, the district court certified its judgment final as to Loomis and Shanahan under NRCP 54(b), which provides that the court may expressly direct the entry of a final judgment when it completely removes parties from an action that remains pending with respect to others if it finds that there is no just reason for delay. Although Loomis and Shanahan argue that the court improperly granted NRCP 54(b) certification" in this instance, we disagree and conclude that the appeal may proceed. See Mallin v. Farmers Insurance Exhange, 106 Nev, 606, 797 P.2d 978 (1990).
[3] NRS 602.010(1) provides,

Every person doing business in this state under an assumed or fictitious name that is in any way different from the legal name of each person who owns an interest in the business must file with the county clerk of each county in which the business is being conducted a certificate containing the information required by NRS 602.020.
[4] Wood v. Safeway, Inc., 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).
[5] Id. at 731, 121 P.3d at 1031.
[6] Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[7] Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 641-42, 81 P.3d 532, 534 (2003).
[8] See Webster's II New College Dictionary 1229 (3d ed.2005) (giving the example of "entered the country under a false name" (emphasis added) ).
[9] Brad Assocs. v. Nevada Fed. Financial, 109 Nev. 145, 149, 848 P.2d 1064, 1066 (1993).
[10] Id.
[11] 109 Nev. 145, 848 P.2d 1064 (1993).
[12] Id. at 149, 848 P.2d at 1067.
[13] Id. at 148, 848 P.2d at 1066.
[1] 109 Nev. 145, 848 P.2d 1064 (1993).
[2] NRS 602.070 provides in full as follows:

No action may be commenced or maintained by any person, mentioned in NRS 602.010, or by an assignee of such a person, upon or on account of any contract made or transaction had under the assumed or fictitious name, or upon or on account of any cause of action arising or growing out of the business conducted under that name, unless before the commencement of the action the certificate required by NRS 602.010 has been filed.
[3] Proprietors of the Mexican Mill v. The Yellow Jacket Silver Mining Co., 4 Nev. 40, 42-43 (1868). See 2005 Nev. Stat., ch. 128, § 39, at 428, which amended the Uniform Partnership Act (1997) effective July 1, 2006, permitting a partnership to bring an action in its fictitious name. NRS 87.4331.
[4] See majority opinion ante p. 1056.
[5] See majority opinion ante p. 1056.
[6] I agree with the Brad Associates majority that NRS Chapter 602 does not apply to claims by individual partners for personal claims against third parties. As the facts in this case demonstrate, however, Shanahan and Loomis admit that their claims arose or grew out of the 52 Cattle Company partnership.
[7] See Richardson Construction v. Clark County School District, 123 Nev. ___, ___, 156 P.3d 21, 23 (2007) (footnotes omitted) in which this court stated,

The construction of a statute should give effect to the Legislature's intent. In determining the Legislature's intent, we may look no further than any unambiguous, plain statutory language. In the absence of such language, we must examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent.
[8] Brad Associates, 109 Nev. at 150, 848 P.2d at 1067 (Young, J., dissenting).
[9] See majority opinion ante p. 1057.
[10] See majority opinion ante p. 1057.
[11] Brad Associates, 109 Nev. at 150, 848 P.2d at 1067 (Young, J., dissenting).