134 Nev., Advance Opinion 55

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| NEVADA RECYCLING AND SALVAGE, LTD., A NEVADA LIMITED LIABILITY COMPANY; AND AMCB, LLC, A NEVADA LIMITED LIABILITY COMPANY, D/B/A RUBBISH RUNNERS, <br> Appellants, <br> vs. <br> RENO DISPOSAL COMPANY, INC., A NEVADA CORPORATION, D/B/A WASTE MANAGEMENT; REFUSE, INC., A NEVADA CORPORATION; AND WASTE MANAGEMENT OF NEVADA, INC., A NEVADA CORPORATION, <br> Respondents. | No. 71467 <br><br> **FILED** <br><br> AUG 02 2018 <br><br> ELIZABETH A. BROWN <br> CLERK OF SUPREME COURT <br> BY_____ <br> CHIEF DEPUTY CLERK |

Appeal from a district court order granting summary judgment in an unfair trade practice dispute. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Affirmed.*

Winter Street Law Group and Stephanie R. Rice, Delmar L. Hardy, and Richard A. Salvatore, Reno,
for Appellants.

Simons Law PC and Mark G. Simons, Reno,
for Respondents.

---

BEFORE THE COURT EN BANC.

## OPINION

By the Court, DOUGLAS, C.J.:

This case arises out of an alleged violation of the Nevada Unfair Trade Practice Act (UTPA). Appellants claim that respondents conspired with a third party to obtain exclusive franchise agreements with the City of Reno for the collection of waste and recyclable materials. According to appellants, this conspiracy precluded them from receiving a franchise agreement with the City of Reno. The question presented in this appeal is whether appellants have been injured in their business and therefore have standing to assert their claim under the UTPA.

We conclude that appellants lack standing to bring an antitrust claim because they were unable to show that they suffered any injuries (i.e., damages).[1] Accordingly, we affirm the district court's order granting summary judgment in favor of respondents.

## FACTS AND PROCEDURAL HISTORY

Appellants Nevada Recycling and Salvage, Ltd. (Nevada Recycling) and AMCB, LLC, d/b/a Rubbish Runners (Rubbish Runners), brought this suit in district court under the Nevada Unfair Trade Practice Act for injunctive relief and treble damages. Nevada Recycling operates a facility that accepts, processes, recycles, and disposes of waste and recyclable materials. Rubbish Runners collects, hauls, and disposes of waste and recyclables for commercial accounts within the City of Reno. The gist of the complaint is that respondents Reno Disposal Company, Inc. (Reno Disposal), Refuse, Inc. (Refuse), and Waste Management of Nevada,

---

[1]As this issue is dispositive, we do not reach the additional issues raised in appellants' appeal.

 

Inc. (Waste Management), who are also collectors, haulers, and disposers of waste and recyclables for commercial accounts within the City of Reno, entered into a conspiracy with nonparty Castaway Trash Hauling (Castaway) for the explicit purpose of monopolizing the waste and recyclables market in the City of Reno.

The City of Reno was looking to implement a single-stream recycling service. Reno Disposal proposed that the City of Reno create exclusive service areas whereby waste haulers would have an exclusive privilege to collect and dispose of waste and recyclable materials within their assigned area. The City of Reno agreed, and it was determined that Reno Disposal and Castaway would each receive exclusive commercial franchise agreements, servicing all of Reno.

Proposed ordinances representing the franchise agreements were drafted and the Reno City Council conducted three public hearings in which the terms and conditions of the ordinances were discussed. At the first reading of the ordinances, Rubbish Runners spoke in opposition to the proposed ordinance, concerned that the ordinances would put it out of business. In addressing Rubbish Runners' concerns, carve-outs and exemptions were included in the ordinances that allowed Rubbish Runners to keep its existing customers upon verification of its customers' contracts. Under the proposed ordinances, Rubbish Runners would not be allowed to expand to new customers and it was not allowed to haul certain types of materials. The ordinances were subsequently approved.

Thereafter, Waste Management purchased Castaway and acquired all of Castaway's rights and duties held under the ordinance. Pursuant to authority granted under the ordinance, Waste Management then assigned its rights and duties held under the ordinance to Reno

 

Disposal. As a result, Reno Disposal had exclusive rights to collect waste and recyclables in the City of Reno subject to the exemptions made for Rubbish Runners under the ordinance.

Before the district court, appellants argued that respondents conspired with Castaway to create an illegal monopoly for Reno Disposal. Reno Disposal and Refuse moved for summary judgment, and Waste Management filed a joinder to the motions for summary judgment. The district court granted summary judgment in favor of respondents, concluding that the *Noerr-Pennington* doctrine applied because respondents' conduct involved political and not business conduct. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). In addition, the district court concluded that, in terms of damages, appellants lacked standing to assert an UTPA claim because they were not qualified to service a franchise zone, they never sought to be considered for a franchise zone, and the City of Reno determined that they were not qualified waste haulers. This appeal followed.

## DISCUSSION

"Antitrust standing is a question of law reviewed de novo." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999). Likewise, a district court's order granting summary judgment is reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and all other evidence on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.* When deciding a summary judgment motion, all evidence must be viewed in a light most favorable to the nonmoving party. *Id.* General allegations and

 

conclusory statements do not create genuine issues of fact. *Id.* at 731, 121 P.3d at 1030-31.

Appellants argue that the district court erred in concluding that they lack antitrust standing. We disagree.

The UTPA, codified in NRS Chapter 598A, provides, in relevant part:

> Any person injured or damaged directly or indirectly in his or her business or property by reason of a violation of the provision of this chapter may institute a civil action and shall recover treble damages . . . .

NRS 598A.210(2). The UTPA "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." NRS 598A.050; *see also Boulware v. Nev., Dep't of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992) ("[The UTPA] also adopts by reference the case law applicable to the federal antitrust laws.").

While we have not yet addressed standing under the UTPA, the United States Supreme Court has addressed standing under the federal antitrust counterpart, the Clayton Act. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 521 (1983). The Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained." 15 U.S.C. § 15(a). The Supreme Court rejected a broad interpretation of the statute, as "[a] literal reading of the statute is broad enough to encompass every harm that can be attributed directly or indirectly to the consequences of an antitrust violation." *Associated Gen. Contractors of Cal.*, 459 U.S. at 529. Instead, antitrust standing requires courts to "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship

 

between them." *Id.* at 535. "[I]t [is] virtually impossible to announce a black-letter rule that will dictate the result in every case," *id.* at 536, thus, certain factors are used to determine antitrust standing:

> (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall;
>
> (2) the directness of the injury;
>
> (3) the speculative measure of the harm;
>
> (4) the risk of duplicative recovery; and
>
> (5) the complexity in apportioning damages.

*Am. Ad Mgmt.*, 190 F.3d at 1054.

"Generally [n]o single factor is decisive." *Id.* at 1055 (alteration in original) (internal quotation marks omitted). Thus, "a court need not find in favor of the plaintiff on each factor." *Id.* Instead, the factors should be weighed and balanced, but the courts "give great weight to the nature of the plaintiff's alleged injury." *Id.* "In fact, the Supreme Court has noted that [a] showing of antitrust injury is necessary, but not always sufficient, to establish standing under [the Clayton Act]." *Id.* (second alteration added) (internal quotation marks omitted).

Appellants' purported injury is that respondents' alleged anticompetitive conspiracy excluded appellants from receiving a franchise agreement with the City of Reno for the collection of waste and recyclable material. The supposed harm here is that appellants lost customers as a result. Appellants claim, "ascertaining the amount of Appellants' damages is complicated by the fact that different rates were charged to Appellants' customers over time prior to losing them."

Here, appellants' alleged harm is insufficient to demonstrate antitrust standing. The UTPA was intended to preserve competition for the

benefit of consumers. *See* NRS 598A.030; *see also GAF Corp. v. Circle Floor Co.*, 463 F.2d 752, 758 (2d Cir. 1972) ("[T]he plaintiff must allege and prove that the illegal restraint of trade injured his *competitive position* in the business in which he or she was engaged."). Nevada Recycling does not collect waste and recyclable materials, and therefore, it is not a competitor as to the franchise agreements. Nevada Recycling has not provided any evidence supporting its contention that the ordinances harmed its business. Even if it did, Nevada Recycling, as a noncompetitor, could not show how any alleged injury is the type the antitrust laws were intended to forestall.

Rubbish Runners, on the other hand, is a competitor, as its services include the collection of waste and recyclable materials. However, Rubbish Runners has not provided any evidence supporting its contention that it lost customers due to the franchise agreements. Pursuant to the franchise agreements, Rubbish Runners was allowed to keep its existing customers upon verification of the customers' contracts. Thus, any loss in customers was a direct result of Rubbish Runners' failure to do so.

Based on the foregoing, we conclude that appellants did not make any showing that they suffered any injuries (i.e., damages) from respondents' alleged conspiracy, and thus, they lack antitrust standing.

Accordingly, we affirm the district court's order granting summary judgment in favor of respondents.

_____, C.J.
Douglas

We concur:

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A