OPINION
By the Court,
Hardesty, J.:
The underlying case arose when a refrigeration and air conditioning company employee sued a property owner over injuries sustained when the employee was installing evaporative, or “swamp,” coolers on the owner’s property. The employee’s suit, however, was found by the district court to be barred under the Nevada Industrial Insurance Act (NIIA), based in part on a 2001 opinion, Harris v. Rio Hotel & Casino.[2] In that opinion, this court determined that the NIIA’s employer immunity protections extend to property owners who hire certain employers — Nevada-licensed principal contractors — to complete construction projects, even when the property owners themselves technically are not considered “employers” under the NIIA. As the district court found that the property owner in this case had hired a licensed principal contractor to complete a construction project, the court determined that the property owner was entitled to immunity from suit by the principal contractor’s injured employee under Harris and, consequently, granted the property owner’s motion for summary judgment.
Thus, in this appeal from the district court’s summary judgment, we consider the property owner’s NBA immunity status, in light of its assertion that it hired a licensed principal contractor, the refrigeration and air conditioning company, to complete construction work. Because Harris addresses property owner NBA immunity status in construction cases only, in which instances immunity generally attaches, we first explore decisions in which we distinguished construction cases from nonconstruction cases. We conclude that our prior decisions directing district courts to differentiate between construction and nonconstruction have, instead of simplifying the NBA immunity determination as intended, led to *1215 increased confusion and incongruity in the law. Accordingly, we retreat from the “construction versus nonconstruction” analysis, and we emphasize that NIIA immunity questions must be resolved under the applicable statutory law. Thus, in making NIIA immunity determinations in these types of matters, courts must generally look, initially, at whether the injured employee and other parties were, when the injury occurred, carrying out work under some principal contractor’s NRS Chapter 624 license.
This conclusion, however, does not impact our determination in Harris that, because the NIIA encourages property owners to hire Nevada-licensed principal contractors, thereby ensuring that workers’ compensation coverage is provided, NIIA immunity should apply to those property owners in return. Nevertheless, we clarify that property owner immunity under Harris extends to bar only those claims that arise out of risks associated with the work for which the property owner hired the licensed contractor.
As the swamp cooler installation in this case was performed by a company that held a Nevada contractor’s license, and because the employee alleged that his injury resulted from a risk directly associated with working on the installation project, the property owner is entitled to immunity, and the district court correctly granted it summary judgment.

FACTS

Respondent Republic Silver State Disposal offers waste collection and disposal services. For several years, Silver State Disposal had contracted with Commercial Consulting, which carried a refrigeration and air conditioning specialty license issued under NRS Chapter 624,[3] to perform service and maintenance on Silver State Disposal buildings’ air conditioners and swamp coolers. In 2000, Commercial Consulting proposed, in writing, to remove ten existing swamp coolers from the roof of Silver State Disposal’s recycling plant, and to then install new swamp coolers in their places. According to the proposal, Commercial Consulting provided its employees with workers’ compensation insurance. Silver State Disposal accepted the proposal, and the swamp coolers’ replacement was completed the next month.
While working on part of the contracted job, a Commercial Consulting employee, appellant Lawrence Richards, finished connecting the newly installed swamp coolers and was descending *1216 from the roof when he slipped off a permanent ladder on the side of the recycling plant, injuring his right foot and ankle. He received workers’ compensation benefits for his injuries from Commercial Consulting. Thereafter, Richards sued Silver State Disposal for negligence, essentially alleging that the ladder was unsafely placed, installed, and maintained.
During the ensuing litigation, Silver State Disposal moved for summary judgment, arguing in part that it was immune from suit under NIIA principles, as those principles were explained by this court in Harris,[4] The district court granted Silver State Disposal’s motion, concluding that Richards’ claim was barred by the NIIA’s exclusive remedy provision. In elaborating on its reasons for granting summary judgment, the court noted that, under Nevada deci-sional law,[5] it was first required to decide whether this matter was a construction case or a nonconstruction case. The court then determined that this matter most resembled a construction case, since it involved the installation of swamp coolers as “permanent” fixtures and was less akin to cases in which frequently assembling and dissembling convention exhibits did not constitute construction.[6] The court also pointed out that Commercial Consulting is a Nevada-licensed contractor. Since the case involved construction by a licensed contractor, the court determined that NIIA immunity attached to bar Richards’ claims.
The court further recognized that, if this were a nonconstruction case, then Silver State Disposal technically would not be entitled to immunity as Richards’ statutory employer because it was in a different line of work than Commercial Consulting.[7] Nevertheless, the court concluded, the theory articulated by this court in Harris— that NIIA immunity should protect property owners who indirectly pay for workers’ compensation coverage because that coverage is calculated into the contract price — would force the court to conclude that Silver State Disposal was entitled to immunity anyway.
Richards appeals, arguing that (1) this is not a construction case, and (2) even if this is a construction case, Silver State Disposal is not a Nevada-licensed principal contractor and thus it *1217 is still not entitled to statutory immunity. Silver State Disposal counters that this is a construction case, and because it is a property owner that contracted with a licensed principal contractor to complete construction work, it is entitled to property owner immunity status under Harris, regardless of its own licensing status.
Because Commercial Consulting was a Nevada-licensed principal contractor and carrying out work under the scope of that license, we agree that this is a case in which the Harris analysis may be applied to determine whether Silver State Disposal is entitled to property owner immunity. Under Harris, however, Silver State Disposal’s property owner immunity status depends on whether Richards’ claims arose out of a risk associated with the work that it hired Commercial Consulting to complete. We conclude that here, since Richards’ claims arose from a risk associated with the licensed swamp cooler installation work — the risk of falling while accessing the roof on which the swamp coolers were located — Silver State Disposal is entitled to immunity, barring Richards’ complaint. Accordingly, we affirm the district court’s summary judgment.

DISCUSSION

We review orders granting summary judgment de novo.[8] Summary judgment is appropriate when, after an examination of the record viewed in a light most favorable to the nonmoving party, no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[9]
In determining that the district court properly granted summary judgment here because, as a matter of law, Richards’ claims were barred by the NEA’s exclusive remedy provision, we reexamine the policies giving rise to property owner immunity, in light of the parties’ arguments. The NIIA’s reciprocal terms generally require employers to provide workers’ compensation coverage to their industrially injured employees and then immunize those employers from any suit brought on account of those injuries. The NIIA, however, treats certain employers, namely, licensed principal contractors, differently because it holds them automatically responsible not only for their direct employees, but also for their indirect employees, and grants them immunity accordingly. In light of *1218 NIIA policies encouraging property owners to hire such licensed principal contractors, a property owner who does so should be, like the licensed principal contractor it hired, immunized from suits for damages connected to an industrial injury. For the property owner, however, this immunity does not extend to claims based on injuries arising out of the employment in general, but rather, is limited to claims that arise out of a risk associated with the licensed work for which the contractor was hired. Because the underlying case involves claims based on industrial injuries sustained by an employee working on a project for which the property owner hired a licensed principal contractor to complete, and because the claims arise out of a risk associated with the licensed work on that project, the district court properly determined that the property owner has NIIA immunity and granted it summary judgment.

NIIA immunity

Under the NIIA, certain employers are required to provide workers’ compensation insurance for their employees.[10] That insurance provides employees with medical and disability coverage for all injuries that are sustained in the course of, and that arise out of, the employment.[11] In return for providing such coverage, the NIIA’s exclusive remedy provision, NRS 616A.020, immunizes those employers and their employees from lawsuits connected with another employee’s industrial injury. An industrially injured employee may, however, sue any other person for personal injury damages. Since the NIIA refers to employers that are required to provide workers’ compensation coverage in exchange for immunity as statutory employers, our review of the NIIA begins with the meaning of “statutory employer.”

Statutory employers

A company that “has in service any person under a contract of hire,” is that person’s statutory employer under the NIIA.[12] The scope of this “statutory employer” definition is broadened for principal contractors, however, which are usually deemed the statutory employers not only of their directly hired employees, but also of the employees of their subcontractors and independent contractors.[13] Therefore, under the NIIA, a principal contractor *1219 must generally ensure that those subcontractors’ and independent contractors’ employees receive workers’ compensation coverage.[14]
Determining whether the NIIA holds a principal contractor responsible for ensuring that indirect employees are covered starts with assessing if the principal contractor carries an NRS Chapter 624 license. That chapter governs the licensing of all contractors, who by definition are persons acting to “construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building ... or other structure, project, development or improvement, or to do any part thereof.”[15] If the principal contractor is licensed under NRS Chapter 624, it is always deemed a statutory employer responsible for providing workers’ compensation coverage for its subcontractors’ and independent contractors’ employees.
But a narrow exception to this umbrella-like coverage requirement applies to principal contractors that are not licensed under NRS Chapter 624, as set forth in NRS 616B.603. That statute provides that nonlicensed principal contractors are not statutory employers (only) when they contract with “independent enterprises.”[16] An independent enterprise is in a different “trade, business, profession or occupation” than the nonlicensed principal contractor, and the nonlicensed principal contractor is not the statutory employer of that independent enterprises’ employees. Consequently, that nonlicensed principal contractor is not responsible for providing workers’ compensation coverage to the independent enterprise’s employees and remains subject to suit by those employees if they are injured.
Thus, while a licensed principal contractor is generally automatically deemed a statutory employer entitled to NIIA immunity, a nonlicensed principal contractor is a statutory employer entitled to immunity only if the subcontractor or independent contractor does not fall within NRS 616B.603’s definition of “independent enterprise.”

Construction/nonconstruction cases under Tucker

In light of these provisions, we set forth, in Tucker v. Action Equipment and Scaffold Co.,[17] an analysis to determine whether a defendant is a statutory employer or co-employee immune from suit under the NIIA. According to the Tucker analysis, the district court must first determine whether the case is a construction case or a nonconstruction case. If the matter is a construction case, the court must then establish whether the defendant is an NRS Chap *1220 ter 624-licensed principal contractor or a licensed contractor working pursuant to a construction agreement with a licensed principal contractor.[18] If the defendant meets either of these NRS Chapter 624-related criteria and “is performing part of the construction work for which it is licensed when the injury occurs,” it is automatically immune from suits brought “on account of” the industrial injury by its statutory employees or co-employees.[19]
But, under Tucker, if the defendant in a construction case is neither an NRS Chapter 624-licensed principal contractor nor working pursuant to an agreement with a licensed principal contractor, or if the matter is not a construction case, the court must then apply a separate test to determine whether the defendant is the injured worker’s statutory employer or co-employee and thus immune from suit. That test, termed the “Meers normal work test” after our decision in Meers v. Haughton Elevator,[20] provides that “[t]he type of work performed by the sub-contractor or independent contractor will determine whether the employer is the statutory employer,” and thus whether employees of the two entities are statutory co-employees between which NIIA immunity exists.[21] In Tucker, we noted that even though Meers uses ‘ ‘normal work” instead of “independent enterprise,” NRS 616B.603 was intended to codify the Meers normal work test.[22] Accordingly, the Meers normal work test and NRS 616B.603 have been conjunc-tively used in determining when a nonlicensed contractor is deemed the statutory employer or co-employee of an industrially injured employee in nonlicensed defendant and nonconstruction cases.
Thus, Tucker’s immunity analysis largely depends on whether the matter is a “construction” case. In Tucker, we did not further explain what types of matters will be considered construction cases and what types of matters will be considered nonconstruction cases. As that analysis suggests, however, since cases involving nonlicensed contractors and those involving nonconstruction are treated the same, but cases involving work performed under an NRS Chapter 624 license are treated differently, Tucker’s initial inquiry, whether the case is construction or nonconstruction, is inaccurate. The question to resolve is not whether a project con *1221 stitutes “construction,” but rather, whether the work, during the performance of which the injury is incurred, is carried out under an NRS Chapter 624 license. If so, the matter is a case in which NIIA immunity generally automatically applies to any contractor on the project.
The Tucker analysis was set forth merely to simplify the NIIA immunity determination in cases involving various contractors and their employees who work together to complete a single project, and it was based on certain analyses that were used before NRS 616B.603 was enacted. As the cases cited in Tucker noted, under those previous analyses, determining if parties were statutorily related was relatively easy when it was shown that the parties involved were contractors and/or their employees working to accomplish a single construction-type project.[23] In contrast, the determination when there was no single overarching construction-type project was often more fact-intensive and, thus, more difficult.[24]
Thus, Tucker attempted to separate, early on, easy “construction cases” in which no intensive analysis was required, from “non-construction cases” in which a more complicated inquiry was necessary. In so doing, besides utilizing pre-NRS 616B.603 case law, Tucker incorporated the then recently enacted NRS 616B.603 into its analysis. Consequently, Tucker first created confusion by failing to define what constituted a “construction case” and then by merging NRS 616B.603’s protections for licensed contractors into the analysis. In doing so, the focus shifted from overarching construction-type projects involving several contractors and subcontractors to whether the contractors and their employees were working under an NRS Chapter 624 license. Accordingly, in another decision, we equated “construction cases” solely with NRS Chapter 624 licenses: “[NRS 616B.603] merely recognizes the known distinction between construction cases (licensed contractors under [NRS] chapter 624) and non-construction cases.”[25]
When the above provisions and cases are considered in light of the purpose behind employer immunity, it becomes clear that the “construction versus nonconstruction” analysis is irrelevant under *1222 NRS 616B.603. Accordingly, we overrule the “construction versus nonconstruction” analysis under Tucker, and we emphasize that these types of NIIA immunity determinations must be resolved under NRS 616B.603. Under that statute, extended immunity generally automatically applies to matters involving a project executed within the scope of an NRS Chapter 624-licensed contractor’s license. All other matters must be further analyzed under NRS 616B.603 and Meers.
Since, in the underlying case, Richards was working on a project to replace swamp coolers, executed within the scope of Commercial Consulting’s NRS Chapter 624 license,[26] when he was injured, this matter falls within NRS 616B.603’s exclusion, meaning that the independent enterprise test does not apply. But that answer does not resolve the question of whether property owner immunity applies. Silver State Disposal argues, even though it is merely a property owner and did not itself “perform” any part of the project’s work, it is entitled to NIIA immunity on the same basis as would be Commercial Consulting, the project’s NRS Chapter 624-licensed principal contractor, given that Silver State Disposal contracted with Commercial Consulting to complete a project under that license. Silver State Disposal bases its property owner immunity argument on our decision in Harris v. Rio Hotel & Casino.[27]

Property owner immunity

In Harris, we reasoned that the NBA immunity parameters may include property owners who, instead of acting as principal contractors themselves, hire an outside principal contractor to complete a project. Ultimately, we concluded that a property owner that hires a licensed principal contractor “stands in the shoes of its licensed [principal] contractor.”[28] As a result, we indicated, the property owner enjoys the same broad immunity from suit based on industrial injuries incurred during the performance of a construction project as the licensed principal contractor,[29] at least when “the contract requires compliance with the NIIA.”[30]
In reaching this conclusion, we first recognized the underlying theme of the exclusive remedy provision, noting that, “[s]ince a principal contractor or a principal employer undertaking a *1223 construction project is held responsible, statutorily, for all the workers on the project, the principal should enjoy the corresponding benefit of statutory immunity.”[31] We then rationalized that “workers’ compensation coverage ‘should equally protect the property owner who, in hiring the contractor, is indirectly paying for the cost of such coverage, which the contractor presumably has calculated into the contract price.’ ”[32] Further, we noted that the “failure to immunize property owners from suits by workers injured while constructing property improvements places commercial property owners at greater monetary risk than if their own employees performed the tasks.”[33] Moreover, we reasoned, “property owners without construction expertise should be encouraged to retain qualified general contractors who are ‘in a better position to reduce the risks of injury’ because they have ‘more knowledge and expertise . . . with respect to the dangers that normally arise during the course of the contractor’s normal work routine.’ ’ ’[34]
Richards suggests that, even if, as Silver State Disposal argues, Harris applies to the underlying matter, Harris’s extension of immunity to property owners in general is both unsupported under the NIIA and overbroad in relation to the policies on which it was based. He asserts that our reasoning in Harris does not support the language of that decision providing that, “if the defendant in a construction case is a property owner ... , the property owner is immune from suit as a matter of law for industrial injuries sustained during performance of the construction contract,”[35] since that language arguably prevents liability from attaching even to negligent conduct unrelated to the construction project.
While we disagree with Richard’s former assertion, that property owner immunity is unsupported by policies underlying the NIIA, we agree that the language used in Harris could be interpreted more broadly than is warranted, especially in light of the confusion caused by its “construction case” language. Specifically, as we explained in Harris, the NIIA is clearly designed to promote the use of NRS Chapter 624-licensed contractors to complete projects. For example, as discussed above, NRS 616B.603 grants automatic immunity to those working on a project under an NRS Chapter 624 license. And property owners that, in turn, hire NRS *1224 Chapter 624-licensed principal contractors to complete a project carried out under that license should likewise be immune from suit for damages for industrial injuries, to the extent that those injuries result from risks associated with completing the licensed work on that project. In that way, property owners are encouraged to hire contractors which, by virtue of their licensable qualifications, are better positioned to manage any risk associated with the project’s work.
As Richards points out, however, there is no reason to extend property owner immunity to claims arising from risks outside the work for which the property owner hired the NRS Chapter 624-licensed contractor. Property owners are not immune, therefore, under NIIA principles and Harris, from claims arising from risks occurring outside the scope of the licensed work.
Thus, in those rare circumstances when the injury bears no nexus to the work for which the NRS Chapter 624 license was issued — that is, the claim does not originate in any risk inherent to the environment or conditions under which that licensed work was being performed — NIIA immunity does not attach, and responsibility for any damages must be determined under the general rules of premises liability.[36] Accordingly, under Harris, property owner immunity applies to bar only claims that are alleged to have arisen from risks associated with the licensed work’s completion, i.e., the project carried out under an NRS Chapter 624 license.
Here, as Richards alleged that his injuries resulted from a risk inherent in performing the swamp cooler installation work for which Silver State Disposal hired an NRS Chapter 624-licensed company, Commercial Consulting, to complete — accessing, by means of a ladder, the roof on which the swamp cooler replacement was carried out — his injuries allegedly resulted from risks directly associated with the licensed work’s completion. The negligence claims that he asserted against Silver State Disposal likewise arose from a risk associated with the work carried out under the NRS Chapter 624 license. Consequently, in light of NIIA policies, property owner immunity applies to bar Richards’ claims, and the district court properly granted summary judgment.

CONCLUSION

As described above, we retreat from the “construction versus nonconstruction” analysis under Tucker. Instead, NIIA immunity determinations in these types of matters must be made under NRS 616B.603 and Meers, under which authority the initial inquiry *1225 looks at whether the injured employee and other parties were, when the injury occurred, carrying out work under some principal contractor’s NRS Chapter 624 license. Contractors working, ultimately, under an NRS Chapter 624 license are entitled to NHA immunity for claims arising from employee injuries incurred in the scope of that work. Correspondingly, under Harris, property owners who hire NRS Chapter 624-licensed contractors are, similarly, entitled to NIIA immunity from suits concerning industrial injuries. But the property owner’s immunity, which stems from the fact that it hired a licensed principal contractor to complete work, applies to bar claims arising out of risks associated with that licensed work — that is, the project for which the property owner hired a contractor licensed under NRS Chapter 624.
Here, because the underlying matter involves an NRS Chapter 624-licensed contractor, property owner immunity, under Harris, applies. And as Richards’ claims are related to a risk arising out of his performance of the work for which Commercial Consulting was licensed and hired by Silver State Disposal to perform, Silver State Disposal is entitled to property owner immunity. Accordingly, we affirm the district court’s summary judgment.
Douglas and Parraguirre, JJ., concur.

 117 Nev. 482, 25 P.3d 206 (2001).

 See NRS 624.220(1) (providing that Nevada contractors’ licenses issued under NRS Chapter 624 are classified by regulation); NAC 624.380 (regulating refrigeration and air conditioning specialty licenses, under which licensees may, among other things, install, repair, service, and maintain evaporative coolers).

 117 Nev. 482, 25 P.3d 206.

 See Tucker v. Action Equip, and Scaffold Co., 113 Nev. 1349, 1356, 951 P.2d 1027, 1031 (1997).

 See GES, Inc. v. Corbitt, 117 Nev. 265, 21 P.3d 11 (2001); Antonini v. Hanna Industries, 94 Nev. 12, 573 P.2d 1184 (1978), overruled in part by Harris v. Rio Hotel & Casino, 117 Nev. 482, 25 P.3d 206.

 See NRS 616B.603; Meers v. Haughton Elevator, 101 Nev. 283 , 701 P.2d 1006 (1985) (describing the “normal work test,” which is used to determine whether NIIA immunity applies in the nonconstruction context).

 Wood v. Safeway, Inc., 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

 Id.

 NRS 616B.612(1).

 See NRS 616A.020(1); Wood, 121 Nev. at 733, 121 P.3d at 1039.

 NRS 616A.230(2).

 NRS 616A.210(1). A “principal contractor” is a person who “(1) Coordinates all the work on an entire project; (2) Contracts to complete an entire project; (3) Contracts for the services of any subcontractor or independent contractor; or (4) Is responsible for payment to any contracted subcontractors or independent contractors.” NRS 616A.285 (emphasis added).

 NRS 616A.210(1).

 NRS 624.020(2).

 See NRS 616B.603(3)(a) (providing that NRS 616B.603(1) and (2) do not apply to NRS Chapter 624-licensed principal contractors).

 113 Nev. 1349, 951 P.2d 1027.

 Id. at 1357, 951 P.2d at 1032.

 Id.; see also NRS 616A.020(1).

 101 Nev. 283, 286, 701 P.2d 1006, 1007 (1985).

 Under the Meers normal work test, the defendant is the statutory employer or co-employee of the injured worker when the worker engages in work that is “(except in cases where the work is obviously a subcontracted fraction of a main contract) . . . normally carried on through [the defendant’s] employees rather than independent contractors.” Id. (internal quotation omitted).

 Tucker, 113 Nev. at 1356, 951 P2d at 1031. NRS 616B.603 was formerly located at NRS 616.262.

 See Tucker, 113 Nev. at 1356 n.4, 951 P.2d at 1031-32 n.4 (recognizing that, under the now defunct control test and under the Meers test, whether a matter was construction or nonconstruction impacted the ease of determining whether a defendant was entitled to NIIA immunity as a statutory employer or co-employee, and citing Sims v. General Telephone & Electronics, 107 Nev. 516, 529 n.6, 815 P.2d 151, 159 n.6 (1991) (“In non-construction situations such as this case, however, this court has taken a much more fact-specific approach to the problem. See, e.g., Meers v. Haughton Elevator, 101 Nev. 283, 285 n.3, 701 P.2d 1006, 1007 n.3 (1985) (expressly noting that inquiry is different in non-construction situations) . . . .”)).

 Id.

 Oliver v. Barrick Goldstrike Mines, 111 Nev. 1338, 1349, 905 P.2d 168, 175 (1995).

 We note that, even though Commercial Consulting did not hire any subcontractors or independent contractors, it is nonetheless a “principal contractor” under NRS 616A.285’s definition of a “principal contractor” as one who contracts to complete an entire project. See supra note 13.

 117 Nev. 482, 25 P.3d 206.

 Id. at 495, 25 P.3d at 215.

 Id. at 493, 25 P.3d at 213.

 Id. at 495, 25 P.3d at 214.

 Id. at 487, 25 P.3d at 210.

 Id. at 493, 25 P.3d at 213 (quoting Privette v. Superior Court (Contreras), 854 P.2d 721, 728 (Cal. 1993), and citing Antonini, 94 Nev. at 19, 573 P.2d at 1189 (noting that a labor broker’s industrial insurance costs will ultimately be borne by the customer-contractee using the laborers)).

 Id.

 Id. (quoting Peone v. Regulus Stud Mills, Inc., 744 P.2d 102, 107 (Idaho 1987)).

 Id. at 495, 25 P.3d at 214.

 See, e.g., Moody v. Manny’s Auto Repair, 110 Nev. 320, 333, 871 P.2d 935, 943 (1994) (noting that a property owner owes a duty to persons entering on the land to act reasonably under the circumstances).